## Henry Hoffman *vs.* City of Bristol.

First Judicial District, Hartford, May Term, 1931.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued May 5th—decided June 22d, 1931.

*William J. Malone* and *Francis V. Tracy,* for the appellant (defendant).

*Josiah H. Peck* and *Jacob Schwolsky,* with whom was *George Schwolsky,* for the appellee (plaintiff).

HINMAN, J. The complaint alleged, in the first count, that the defendant city was negligent in maintaining a diving board above shallow water at a bathing beach in a park owned and maintained by it and in failing to give warning of the danger connected with its use and, in a second count, that "the action of defendant in constructing and maintaining said diving board . . . was imminently and inherently dangerous and made the use of said diving board unsafe and dangerous to the people lawfully using the same, wrongfully exposed such users to injury and the same was at all times a nuisance." It also alleged the circumstances of the plaintiff's use and injury, which sufficiently appear hereafter. The defendant pleaded a denial, except as to ownership and maintenance of the park and, as a special defense, that it maintained the park solely for the public benefit and without profit, in performance of a governmental duty. The appeal is from the refusal of the trial court to set aside the general verdict for the plaintiff, only, and, aside from a claim that the jury could not, upon the evidence, have found the plaintiff free from contributory negligence, rests largely upon the contention that immunity, arising from the facts alleged in the special defense which the appellee appears to concede to have been established, not only applies to liability for negligence alleged in the first count, but also extends to nuisance if the facts proven under the allegations of the second count constitute such.

Except as to the existence, number, and location of warning signs, there was little conflict of evidence as to the physical situation. In the park in question there is a pond or lagoon on the shore of which a bath-

ing pavilion and various appurtenances were erected and maintained by the city. About twenty-two feet in front of the building a stone wall extends along the shore, the top being about four feet above the surface of the water. Two abutments of this wall extend out into the water four or five feet, and to these were fastened diving boards extending out over the water five or six feet beyond the abutments. The depth of the water, which varied but little from time to time, was only three to three and one half feet under the end of the diving board in question. The water was dirty or roily and of greenish color so that the depth could not be seen from the spring-board. There was testimony that no signs indicating the shallowness of the water or the danger of diving from the board were displayed at the time of plaintiff's accident; the jury could have so found, and the most that they could reasonably have found in this respect was that one sign was located in a recessed window of the ladies' locker room of the bathing pavilion, some twenty feet east from the diving board and of doubtful visibility to one approaching the board, as did the plaintiff, from the west.

The plaintiff, with several companions, went to the park on the afternoon of July 7th, 1929, and spent some time bathing at a point some distance from the diving boards, paying no attention as to whether they were being used. Being about to cease bathing he, with three girl companions, walked along the wall to the first diving board and the girls entered the water by means of steps near by while the plaintiff went to the end of the spring-board. He was experienced and competent in diving and dove in the ordinary manner, but owing to the shallowness of the water first his hands and then his head struck violently against

the bottom and he sustained very serious and lasting injuries.

As to the cause of action based upon negligence, it is manifest that the facts of the special defense suffice to relieve the defendant from liability, through the immunity which we have recognized as attaching to the performance by a municipality of a public duty, for the public benefit, and not for its own corporate profit. *Carta* v. *Norwalk,* 108 Conn. 697, 701, 145 Atl. 158; *Hannon* v. *Waterbury,* 106 Conn. 13, 136 Atl. 876. It remains to be considered whether the same defense is efficacious to defeat recovery upon the cause of action grounded on nuisance.

Where a municipal corporation creates and maintains a nuisance it is liable for damages to any person suffering special injury therefrom, irrespective of whether the misfeasance or nonfeasance causing the nuisance also constituted negligence. This liability cannot be avoided on the ground that the municipality was exercising governmental functions or powers, even in jurisdictions where, as here, immunity is afforded from liability for negligence in the performance of such functions. 6 McQuillin on Municipal Corporations (2d Ed.) 815 *et seq.;* 43 Corpus Juris, p. 956. "If the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as matter of fact; but if the act in its inherent nature is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty, it should be held a nuisance as matter of law." *Melker* v. *New York,* 190 N. Y. 481, 488, 83 N. E. 565.

While, as we have seen, Connecticut has, so far, aligned with those States which do not hold a municipality liable for negligence in the performance of governmental functions and duties, we have definitely and

repeatedly recognized that a similar immunity does not attach to nuisances created by it. In *Mootry* v. *Danbury* (1878) 45 Conn. 550, an action against the town for damages for constructing a bridge and road in such a manner as to set the water of a stream back upon land of the plaintiffs, it was held (p. 556) that "towns will not be justified in doing an act lawful in itself in such a manner as to create a nuisance, any more than individuals. And if a nuisance is thus created, whereby another suffer damage, towns like individuals are responsible." In *Colwell* v. *Waterbury*, 74 Conn. 568, 51 Atl. 530, it was stated (pp. 572, 573) that the rule which exempts municipalities from liability when they or their servants are acting in the discharge of a public duty does not relieve them "from liability for the consequences of particular acts which the municipality has directed to be performed, and which, from their character or the manner in which they are so ordered to be executed, will naturally work a direct injury to the property of others, or create a nuisance, or occasion a wanton injury to the property or rights of other persons."

*Pope* v. *New Haven*, 91 Conn. 79, 99 Atl. 51, was an action for personal injuries from the explosion of a bomb in the course of a fireworks display provided by the defendant city. The majority held the complaint to sound in negligence only, and that since the acts were committed in the performance of governmental duty the city was not liable for the negligence of its servants while engaged therein. The minority construed the complaint to set up, also, wantonness and nuisance, and discussed rules applicable to the latter cause of action. It cites *Colwell* v. *Waterbury, supra,* quotes (p. 90) as "a satisfactory test for determining whether an act or acts constitute a nuisance," the statement from *Melker* v. *New York, supra,* which

we have already given, and holds, further (p. 88), with abundant citation of authority, that "a wanton injury to the person of another, or a nuisance committed against his person, creates a liability in the municipality no less than when the wanton injury or nuisance is committed against his property. Governmental immunity does not exempt from liability for personal injury from a wanton act or a nuisance." We regard these views as sound in reason and on authority. The members of the court differed only as to the construction of the record and the majority opinion did not discuss liability for nuisance.

The rule as stated in *Colwell* v. *Waterbury* was quoted in *Flynn* v. *West Hartford,* 98 Conn. 83, 118 Atl. 517, and is referred to in *Vezina* v. *Hartford,* 106 Conn. 378, 383, 138 Atl. 145, as providing an antidote for extreme results of the application of the doctrine of governmental immunity apprehended by the appellant therein. It is cited in *O'Donnell* v. *Groton,* 108 Conn. 622, 627, 144 Atl. 468, as available to the plaintiff if, instead of depending upon negligence alone, he had alleged and proved that the acts in question would be intrinsically dangerous or constituted a nuisance. Similar opportunity was open to the plaintiff in *Carta* v. *Norwalk,* 108 Conn. 697, 145 Atl. 158; *Epstein* v. *New Haven,* 104 Conn. 283, 132 Atl. 467; *Hannon* v. *Waterbury,* 106 Conn. 13, 136 Atl. 876, and other analogous cases.

Such cases as *Hewison* v. *New Haven,* 37 Conn. 475; *Dyer* v. *Danbury,* 85 Conn. 128, 81 Atl. 958; *Riccio* v. *Plainville,* 106 Conn. 61, 136 Atl. 872, and *Rogers* v. *Meriden,* 109 Conn. 324, 146 Atl. 735, illustrate the limitations of the rule we are considering and the distinction between those nuisances to which governmental immunity does not apply and conditions to which it is applicable. In the *Hewison* case the weight

overhanging the street, in the *Dyer* case the dead tree within the street limits, in the *Riccio* case the tree protruding over the highway, in the *Rogers* case the catch-basin cover, if constituting a nuisance, was such that the only duty of the city was to remove or abate it. It was not a structure or condition created by the city, certainly not by acts which were wrongful in nature or in intent actual or implied; the fault, if any, consisted in the failure to use the requisite care in remedying a condition otherwise created or occurring. Therein lies the distinction between nuisance to which governmental immunity does not attach, and mere negligence as to which it is available. *Herman* v. *Buffalo,* 214 N. Y. 316, 108 N. E. 451.

The charge in the present case is not attacked by assignments of error and we are entitled to assume that the jury were correctly instructed as to what would constitute such a nuisance as to render the city liable for the injuries sustained by the plaintiff, notwithstanding the special defense. The diving board admittedly was erected and located about four feet above the surface of water of a constant depth of but little more than three feet and usually so opaque that its shallowness was not discernible by one standing on the board. The jury could reasonably have found that no notice or warning of these conditions was so provided or given that it would with any reasonable certainty be brought to the attention of a member of the public accepting the invitation offered by the presence of the board and its manifest purpose. They were justified, on the evidence, in concluding that the situation so created was so inherently dangerous and a menace to the safety of users as to constitute such a nuisance in fact that the defense of immunity from liability as for negligence in the performance of gov-

ernmental duty was not available to the defendant with respect thereto.

The applicability and effect of contributory negligence upon liability for nuisance is one of considerable difficulty and conflict of authority, as appears by the extensive and illuminating discussion of the subject in an opinion by Cardozo, C. J., in *McFarlane* v. *Niagara Falls*, 247 N. Y. 340, 160 N. E. 391. It is there held (pp. 347, 348) that "at least where the substance of the wrong is negligence, a plaintiff, though pleading nuisance, is under a duty to show care proportioned to the danger. Reasonable care is merely care so proportioned. The danger may be seen or unseen. If seen, there must be effort to avoid it. If unseen, the inquiry will be whether one using a street as travelers commonly do, would perceive the danger, and escape it. . . . What we rule in this case is limited to a situation where negligence is the basis of the nuisance. . . . In thus limiting our ruling, we are not to be understood as holding by implication that where the nuisance is absolute, the negligence of the traveler is . . . of no account." In nuisance of that order, the fault that bars recovery is fault so extreme as to be equivalent to invitation of injury or, at least, indifference to consequences.

In the present case, since the nuisance involved is not one grounded on negligence but within the class above characterized as "absolute" it would seem that the applicable measure of such contributory negligence as would bar recovery would be that last specified. *Worth* v. *Dunn*, 98 Conn. 51, 62, 118 Atl. 467. But even if the plaintiff were obligated to use reasonable care, his conduct could reasonably have been found to answer, also, the requirement of that test. He could have been held justified in assuming from the presence of the equipment that the water under it

was of sufficient depth to permit diving with ordinary care and skill, which he could well be found to have exercised. The jury were warranted in finding that if any warning sign was displayed it was not in such a location as reasonably to have attracted the attention of one approaching the diving board from the direction from which the plaintiff came; that he had never dived from the board before and had not, otherwise, notice as to the depth of water; that his girl companions, though standing in the water, were near the wall and behind him, affording no significant intimation of the depth at the point where he dove. *Norberg* v. *Watertown*, 53 S. Dak. 600, 221 N. W. 700.

There is no error.

In this opinion the other judges concurred.