PETER STOTO *vs.* THE CITY OF WATERBURY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 6th—decided July 27th, 1934.

*James E. McKnight,* for the appellant.

*Vincent A. Scully,* with whom was *Charles S. O'Connor,* for the appellee (defendant).

MALTBIE, C. J. The plaintiff brought this action to recover damages for injuries suffered when he fell into an open areaway constructed and maintained in connection with a fire station of the defendant city, and

from a judgment for the defendant has appealed. He seeks certain changes in the finding, but as made it sufficiently presents the issues of law. It states the following facts: The defendant owned a piece of land which was bounded upon the east by a passway sixteen feet wide, on the east side of which was a tract of land owned by Frank Santoro, in part occupied by certain tenements. Neither the defendant nor Santoro owned the fee of the land included in the passway. The defendant built the fire station upon its property, the easterly wall being about three feet west of the line of the passway. In connection with the building it constructed an areaway, used to remove ashes from the basement, which extended to such a distance that about fourteen inches of it were within the passway. The areaway was surrounded by a coping raised approximately five inches above the level of the pavement of the passway. When constructed the areaway was covered by two iron doors, opening one to the north and the other to the south, and held in a vertical position when open by chains and an iron bar. The existence of the areaway did not interfere with the ordinary and proper use of the passway, nor was its construction wrongful in nature or in intent. Prior to June 13th, 1930, the chains designed to hold the doors in a vertical position had become worn and broken and on that day the doors were open and lying flat on the ground, leaving the easterly side of the areaway entirely unguarded and unprotected, a situation which had existed for two days before that time. In the evening of that day the plaintiff had been visiting the occupant of one of the tenements on the Santoro property. In going to an automobile which was waiting for him, standing opposite the areaway, he went around the rear, tripped on the coping and fell into the areaway, suffering the injuries to recover

for which he brought this action. It was dark at that place in the areaway, the plaintiff had no prior knowledge of its existence and was entirely without fault or negligence. He had a legal right to be upon the passway and was lawfully using it. From these facts the trial court concluded that the areaway as created and maintained by the defendant did not constitute a nuisance, but that the conditions which caused the plaintiff to fall arose out of the negligence of the defendant, its servants and agents, and that the defendant was not liable in damages to the plaintiff because the acts of negligence were committed in the performance of a governmental duty as a municipal corporation.

It is difficult to determine the rationale of the trial court's decision. Its finding that the existence of the areaway did not interfere with the ordinary and proper use of the passway, in the connection in which it is made, evidently has no bearing upon any dangerous condition caused by leaving the doors of the areaway open. The finding that the construction of the areaway was not wrongful can hardly be reconciled with the statement that the defendant did not own the fee of the land of the passway. That the areaway, with the doors open and lying flat and nothing to guard it, did cause a condition of possible danger is evident from the finding that the defendant was negligent. The trial court has not found that this condition was not one the natural tendency of which was to create danger and inflict injury upon person or property, a conclusion which would also hardly accord with its finding of negligence; for the very basis of such negligence as was found would be that the defendant should have anticipated the likelihood of danger to users of the passway, if the areaway was left open and unguarded; *Trasacco* v. *New York, N. H. & H. R. Co.,*

113 Conn. 355, 362, 155 Atl. 493; *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 141, 157 Atl. 860; and the distinction between the two tests is so narrow that, had the trial court intended to make it, the finding would surely have so indicated. We are not called upon, therefore, to consider whether, had the trial court found that there was not such a condition as would have a natural tendency to create danger and inflict injury, this would be a conclusion of fact which we could not hold to be erroneous. *Capozzi* v. *Waterbury,* 115 Conn. 107, 160 Atl. 435.

If we turn to the trial court's memorandum of decision in the effort to determine the basis of its decision, we find a statement that the construction of the areaway was proper for the place, a statement hardly to be reconciled, as we have stated, with the finding that the defendant did not own any fee in the passway, and that the areaway was no nuisance open or closed so long as it was kept in order. The trial court then quoted a sentence from *Hoffman* v. *Bristol,* 113 Conn. 386, 392, 155 Atl. 499, as follows: "It was not a structure or condition created by the city, certainly not by acts which were wrongful in nature or intent actual or implied; the fault, if any, consisted in the failure to use the requisite care in remedying a condition otherwise created or occurring." This paragraph of the memorandum concludes with the statement that allowing the ash pit to get out of repair had every characteristic of negligence. If the conditions necessary to create a nuisance were present, it might have arisen as well out of subsequent negligent omissions as out of the manner in which the situation was originally created. *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 Atl. 499; *Philadelphia, Wilmington & Baltimore R. Co.* v. *Philadelphia & Havre de Grace Steam Towboat Co.,* 64 U. S. (23 How.) 209, 216; *Borough of*

*Bathurst* v. *Macpherson,* L. R. 4 App. Cas. 256, 267; *Municipal Council of Sydney* v. *Bourke,* L. R. (1895) App. Cas. 433, 441; Joyce, Nuisances, § 44; 46 C. J. 659. The *Hoffman* case is an example of a situation where the same facts might give rise to an action for negligence and one based upon a nuisance. That in this case the dangerous situation which came about was due to the negligence of the defendant's agents and servants would not be a sufficient basis for a conclusion that the areaway, left open and unguarded, was not a nuisance.

To sum up our discussion thus far, it is difficult upon the record to find a basis for the conclusion of the trial court that the extension of the areaway into the passway was not an unlawful act on the part of the defendant; it is not found that the situation created by leaving it open and unguarded was not one which would have a natural tendency to create danger and inflict injury; it is found that the conduct of the defendant's agents and servants was negligent and hence in effect that the situation was such that a likelihood of injury to persons using the passway was reasonably to be anticipated; and as matter of law a nuisance may exist although it has its origin in a negligent omission to take steps to guard against danger. It follows that the conclusion of the trial court that there was no nuisance is not supported by the subordinate facts it has found and was apparently based upon some misapplication of the relevant rules of law. It cannot therefore stand.

It is true that the trial court goes on in its memorandum of decision to state that the doctrine of municipal liability for nuisance is a salutary one, when a real nuisance is created, but if the doctrine of governmental immunity is to survive at all, it should not be extended

to cover cases where negligence is the substance of the complaint. While this conclusion of law does not appear in the finding, it apparently entered into the decision of the trial court and no doubt will be asserted upon a retrial of the action. In the sentence which the trial court quoted from our decision in *Hoffman* v. *Bristol,* we were distinguishing certain situations where the municipality, which it was sought to charge with liability for injury, at worst passively permitted a dangerous condition to continue where it might have remedied it. Here the defendant city itself had caused the areaway to be constructed, apparently wrongfully, and any negligence in leaving it open and unguarded was the negligence of its own servants. In *Flynn* v. *West Hartford,* 98 Conn. 83, 118 Atl. 517, we held that a town was liable on the ground of negligence where, in repairing a water main, it had made an excavation in and a pile of dirt upon a highway, and left them unguarded, as a consequence of which the plaintiff, driving his automobile into them, suffered injury. We said (p. 85): "Aside from the liability under the statute, the defendant would be liable under the common-law rule for an injury proximately resulting from the presence upon the highway of this pile of sand and earth and excavation, because it was responsible for their existence; it made the excavation, it piled up the sand and earth and left them inadequately guarded." Here the defendant caused the areaway to be constructed and its agents and servants left it open and unguarded when they should reasonably have anticipated the likelihood of danger to persons using the highway. The situation is not within the exception to the liability of a municipality for injury due to a nuisance for the existence of which it is not responsible.

There is error, the judgment is set aside and a new trial ordered.

In this opinion HAINES and BANKS, Js., concurred.

HINMAN, J. (dissenting). The condition shown by the finding, as made or as it might properly be corrected, cannot be regarded as an "absolute" nuisance, and so a nuisance as a matter of law. The real questions in the case are those presented by the plaintiff's claims of law, viz.: Whether the areaway (1) opened or closed, or (2) when opened as constructed and designed to be normally operated, or (3) as maintained on the day of the injury, had such "a natural tendency to create danger or inflict injury" as to constitute a nuisance, i. e. a nuisance as a matter of fact. *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 Atl. 499. Our inquiry, then, is whether, upon the facts, the trial court was precluded from concluding, as it did, that the areaway did not constitute such a nuisance, either as created or maintained.

As designed, constructed and normally maintained, I contend it was not a nuisance in any accepted sense, or at least that it was open to the trial court to reach that conclusion. The encroachment of fourteen inches on the sixteen foot passway is not to be regarded as "wrongful" either in nature or intent, in the sense contemplated in order to be an element in nuisance. Although wrongful in the sense of constituting a trespass, it was not—in the meaning here connoted—a deliberate and at least impliedly intended exposure of others to injury. The five-inch coping was built for the essential purpose of guarding against water from melting snow and otherwise, it was not in a public highway or sidewalk but beside and extending slightly within a private passway, traffic through which, ex-

cept for the purposes of the city itself, would naturally be on the other side, near the Santoro buildings. Therefore the finding that "the existence of the area-way did not interfere with the ordinary and proper use of the passway nor was its construction an act wrongful in nature or intent" should stand. The plan and construction of the doors obviously was designed to safeguard against, rather than create, danger; the purpose of the chains was to prevent the doors from going back too far, that of the bar to keep them from falling inward, and the effect of both, when normally operated, was to hold the doors upright. Although while the lift was being used the bar might be across the back side, it was clearly intended that at other times it would be placed across the easterly end, creating in effect a railing, and it is found that this was customarily done. It cannot be that—as the plaintiff goes so far as to claim—the open space, two and three-quarters feet high, under the bar when so placed would, of itself, constitute an actionable nuisance. Therefore it seems to me that a conclusion that the condition as normally maintained did not amount to a nuisance cannot be overturned as a matter of law.

Coming to the situation as it is found to have been at the time of the accident, it must be conceded that the departure from normal had its origin and existence through negligence in failing to repair the chains and in leaving the doors flat open, contrary to the design and prevailing custom. Ordinarily, continuance is the essence of nuisance. The plaintiff appears to admit, in his brief, that in order that the result of negligent acts or omissions may "ripen into" and become a nuisance it must have continued an unreasonable length of time. The finding is that the doors had been left open only two days before the accident. Can we say as a matter of law that, contrary to the necessary

import of the trial court's conclusion, this was sufficient to convert a condition, created through negligence, into a nuisance? In *Flynn* v. *West Hartford,* 98 Conn. 83, 84, 118 Atl. 517, we were dealing with "acts which the municipality has directed to be performed"—an excavation and pile of dirt in a public highway—and not with a condition, not originally calculated to work injury to others but becoming such through negligent failure to repair or to operate normally. The quotation from the *Hoffman* case in the memorandum of decision seems pat—the fault consisted in negligent failure to remedy a condition, rather than in the creation of a condition by direct act. In my opinion the record discloses, at most, a condition which may result in injury to others if not properly operated or guarded, rather than one which in the nature of things must so result, and in which liability depends upon negligence in operation or mode of maintaining. For mere negligence, of course, the city is not liable.

In this opinion AVERY, J., concurred.