FREDERICK H. BECKWITH, ADMINISTRATOR (ESTATE OF
ELLA F. BECKWITH) *v.* TOWN OF STRATFORD ET AL.

MALTBIE, C. J., JENNINGS, ELLS and DICKENSON, Js.[1]

[1] By agreement of counsel the case was argued before and decided
by four judges.

Argued October 7—decided December 28, 1942.

*William Reeves,* with whom was *John F. McGowan,* for appellant (named defendant).

*Theodore E. Steiber,* for the appellee (plaintiff).

MALTBIE, C. J. The plaintiff brought this action to recover for injuries suffered by a fall which, as she claimed, was caused by stepping into a depression in a sidewalk in the defendant town as she was walking along it. She died and the administrator of her estate was substituted as plaintiff. From a judgment in his favor the town has appealed. The action was based on nuisance. The trial court's findings as to the circumstances of the plaintiff's fall and that it was due to her stepping into the depression are supported by evidence sufficient to meet the standard of proof in a civil action, that is, proof which produces "a reasonable belief of the probability of the existence of the material facts." *Esserman* v. *Madden,* 123 Conn. 386, 388, 195 Atl. 739. The sidewalk in question was five feet wide. In order to provide a driveway approach to the abutting property, the outer edge of the sidewalk for a distance of thirteen feet was made level with the pavement of the adjacent street; this portion

of the walk sloped upward from the line of the pavement for a distance of eighteen inches until it reached the level of the remainder of the walk; and at the sides of the approach it also sloped upward for eighteen inches to the same level. The depth of the depression at the line of the pavement was four and one-half inches. The result was that these slopes had a pitch of three inches to a foot. The engineering standard for such construction is that there shall be a slope with a cross pitch of not more than one-half inch to the foot. The suddenness of this slope could have been avoided by commencing the depression at a point farther away from the line of the pavement and gently sloping it down to the level of the pavement. If two persons were walking abreast along the sidewalk, the depression would be apt to be in the course of the one walking nearer the street. The location is in a busy section of the defendant town.

This condition did not constitute a nuisance per se. This exists where there is a condition which is a nuisance in any locality and under any circumstances. 39 Am. Jur. 291. Such a nuisance as regards the use of land seldom, if ever, occurs; the same conditions may constitute a nuisance in one locality or under certain circumstances, and not in another locality or under other circumstances. To constitute a nuisance in the use of land, it must appear not only that a certain condition by its very nature is likely to cause injury but also that the use is unreasonable or unlawful. *Hoadley* v. *Seward & Son Co.*, 71 Conn. 640, 646, 42 Atl. 997; *Cadwell* v. *Connecticut Railway & Lighting Co.*, 84 Conn. 450, 454, 80 Atl. 285; *Balaas* v. *Hartford*, 126 Conn. 510, 514, 12 Atl. (2d) 765; 1 Wood, Nuisances (3d Ed.), § 2; Winfield, Textbook of the Law of Tort, 468. There is no claim in this case that the city acted unlawfully in constructing the

sidewalk as it did. That the condition here in question not only was a source of danger to persons using the sidewalk but that it unreasonably exposed them to that danger were conclusions which the trial court could reasonably reach. It is true that it found that no claim other than the one in suit had ever been made against the defendant town for injuries claimed to be due to a fall because of this particular depression, and that a similar method of construction of driveway approaches had been used in many other instances in the defendant town; and the defendant is entitled to have added to the finding the fact that, within the period of seven preceding years, no claim had been made for injuries due to falls at these other places. These facts, however, fall short of establishing that other persons had not fallen because of these depressions and are insufficient to invalidate the conclusion of the trial court that there existed a nuisance in fact by reason of the depression.

The defendant also claims that the plaintiff was not entitled to recover, by reason of her own contributory negligence. The trial court found that she was not guilty of contributory negligence, but, even if she had been, that this would not defeat her cause of action because the nuisance was one created by positive acts of the agents of the town, and did not arise merely because of neglect on its part. We have no need to consider whether the court could reasonably reach the first conclusion because its second was undoubtedly sound.

In the argument, defendant's counsel stated that there was some misunderstanding at the bar as to the meaning of the term "absolute nuisance" as used in our opinions and the effect of a finding of the existence of such a nuisance as regards contributory negligence. The words quoted were used in the opinion of the

New York Court of Appeals, speaking by *Cardozo, C. J.*, in *McFarlane* v. *Niagara Falls,* 247 N. Y. 340, 348, 160 N. E. 391, 57 A. L. R. 1, in which the attempt was made to arrive at a rational and practicable solution of the vexing problem as to the place of contributory negligence in an action based on a nuisance. See note, 57 A. L. R. 7. In *Hoffman* v. *Bristol,* 113 Conn. 386, 393, 155, Atl. 499, we quoted the portion of the opinion in the *McFarlane* case in which the words "absolute nuisance" were used. In these opinions these words refer to situations in which negligence is not the "basis of the nuisance," as expressed by Judge Cardozo, or the nuisance "is not grounded on negligence," as expressed by *Hinman, J.,* in the *Hoffman* case. This was the meaning given them in *Hill* v. *Way,* 117 Conn. 359, 364, 168 Atl. 1, *Bacon* v. *Rocky Hill,* 126 Conn. 402, 412, 11 Atl. (2d) 399, and *Warren* v. *Bridgeport,* 129 Conn. 355, 360, 28 Atl. (2d) 1. It is true that in *Gipstein* v. *Kirshenbaum,* 118 Conn. 681, 684, 174 Atl. 261, and *Jager* v. *First National Bank,* 125 Conn. 670, 678, 7 Atl. (2d) 919, the words might be taken to refer rather to cases where there was a nuisance as matter of law as opposed to one where the existence of the nuisance was to be determined as a question of fact. We did not mean in these cases to hold that contributory negligence would not be a defense to a nuisance existing as matter of law, if that nuisance was grounded in negligence, for that would not be so.

Apart from nuisances which have their origin in accident, nuisances resulting in personal injury fall into three general classes. Beven, Negligence (4th Ed.), p. 426, note. One class includes nuisances which result from conduct which is in itself a violation of law, and as to them it has been held on high authority that contributory negligence is not a defense; *Delaney* v. *Philhern Realty Holding Corporation,* 280 N. Y. 461,

465, 21 N. E. (2d) 507; but with such nuisances we have no concern in this case. A second includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance. The other class includes nuisances which have their origin in negligence, which in its essence is an absence of due care. Nuisances falling in the second class are those which we characterize as absolute and against which contributory negligence is not a defense. To hold that contributory negligence should not be a defense as regards them and should be as to the last class of nuisances rests upon the essential difference in the nature of the wrong committed. Negligence consists in a failure to exercise due care, and to a nuisance grounded on negligence, contributory negligence is for that reason an appropriate defense. Winfield, op. cit., p. 501. Where, however, the essence of the wrong is conduct which is intentional, in the sense in which we have used that word, that conduct goes beyond a mere lack of proper care, and there is not the same balance of obligation between the duty of one person to guard another from an injury from such a lack and the duty of the other not to fail to exercise a like care in his own protection. See Bohlen, Studies in the Law of Torts, p. 527. The fact that contributory negligence is not a defense as against reckless misconduct presents a somewhat analogous situation. See *Nehring* v. *Connecticut Co.,* 86 Conn. 109, 122, 84 Atl. 301, 524; *Rogers* v. *Doody,* 119 Conn. 532, 535, 178 Atl. 51; *Mooney* v. *Wabrek,* 129 Conn. 302, 308, 27 Atl. (2d) 631.

In *Hoffman* v. *Bristol,* supra, the nuisance claimed consisted of the erection of a diving board in a bathing pond above water so shallow as to make diving from

it dangerous; the defendant intended to produce the very conditions which were found to be a nuisance; and we held the nuisance to be an absolute one, although, no doubt, had the action been against an individual, negligence apart from nuisance might have been the basis of recovery. See *Skelly* v. *Pleasure Beach Park Corporation*, 115 Conn. 92, 160 Atl. 309. On the other hand, in *McFarlane* v. *Niagara Falls*, supra, the plaintiff, walking along a sidewalk, caught her heel against a fan-like projection, irregular and slanting, with declivities and hollows, a condition which had existed ever since the walk was built but which was obviously not intended, and the court held that the nuisance was not an absolute nuisance, saying (p. 348): "What was dangerous and wrong did not inhere in the work contracted to be done, but in the manner of its doing." In *Hill* v. *Way*, supra, a rope extending across a highway was being used in drawing iron rails from beneath an adjacent building; it was intermittently relaxed and taut; when it was relaxed there was no appreciable danger to anyone, but when in the process of the work it was drawn taut a dangerous nuisance was created; at a time when the rope was stretched taut across the road, an automobile collided with it; and we held that the nuisance was one grounded on negligence. Further consideration has led us to the conclusion that we were wrong in that ruling. The stretching of the rope taut across the road brought about a condition which was inherent in the work being done and was therefore intentional. The situation is the antithesis of that in the *McFarlane* case, where the defective condition causing the injury was not intended but resulted from negligent conduct in an effort to produce the intended condition.

On the other hand, the street sweeper involved in *Warren* v. *Bridgeport*, supra, operating on a foggy

night on a city street against traffic with but one light visible might have been found to constitute a nuisance grounded on negligence, because the fault lay, not in its operation at night on a city street, but in a failure to take precautions against dangers arising out of the particular circumstances surrounding that operation. The distinction is also brought out in *Parker* v. *Hartford*, 122 Conn. 500, 190 Atl. 866; the plaintiff claimed the right to recover for injuries suffered by stepping into a gully in a highway; the defendant city had not created the gully; and we said (p. 504): "Even if the gully constituted a nuisance, it was a situation which was not created by the defendant and the only liability which could attach to it would be its failure to remedy the condition. To that failure governmental immunity would attach if it were not for the liability for a defect in the highway created by the statute." In that case, had the gully constituted an actionable nuisance because of the neglect of the defendant city to guard or remedy the dangerous condition, the nuisance as regards the city would have been one grounded on negligence and contributory negligence would have been a defense, as indeed we held that it was under the statute concerning defects in highways. To give another example: If a person digs a pit on his own land adjacent to a sidewalk and leaves it without adequate guard to protect passersby from falling into it, as to a person who suffers injury in that way it might be regarded an absolute nuisance; but if, when dug, adequate guardrails were erected about it but they subsequently, by the neglect of the landowner, became insufficient, the nuisance, if one existed, would be grounded on negligence, and contributory negligence would be a defense. See *Stoto* v. *Waterbury*, 119 Conn. 14, 174 Atl. 189.

It should be noted that we are here considering contributory negligence alone. As pointed out in the

*Hill* case (p. 364), even as against an absolute nuisance assumption of risk may be a defense; and, as we said in the *Hoffman* case (p. 393), a plaintiff may be barred of recovery by "fault so extreme as to be equivalent to invitation of injury or, at least, indifference to consequences." See *Worth* v. *Dunn,* 98 Conn. 51, 62, 118 Atl. 467; *Murphy* v. *Ossola,* 124 Conn. 366, 372, 199 Atl. 648; *Hammond* v. *County of Monmouth,* 117 N. J. L. 11, 16, 186 Atl. 452; Prosser, Torts, p. 598.

The sidewalk here in question was in the very condition when the plaintiff fell in which it was intended to be constructed, and the fault therein did not arise from any lack of due care in the method of construction. The nuisance was an absolute nuisance and the trial court was correct in its ruling that contributory negligence would not be a defense.

There is no error.

In this opinion the other judges concurred.

---

[1] By agreement of counsel the case was argued before and decided by four judges.