Dennis Wendt et al. *v.* Phillip Balletto et al.

Superior Court      New Haven County      File No. 88926
AT New Haven

Memorandum filed February 23, 1966

*Reilly & Peck,* of New Haven, for the plaintiffs.

*Winnick & Winnick,* of New Haven, for defendant Viscuso.

*Gumbart, Corbin, Tyler & Cooper,* of New Haven, for the named defendant.

*David Meshako,* a defendant, pro se.

PARSKEY, J. Defendant Balletto has filed a motion for judgment notwithstanding, or in the alternative to set aside, the verdict. His bases are that the verdict is contrary to law, contrary to the evidence, and resulted from error in charging the jury, from error in ruling upon evidence and from failure properly to instruct the jury with respect to the possible forms of verdict.

From the evidence offered at the trial, the following facts appear: Sometime in January, 1958, the defendants Meshako and Viscuso, both about fourteen years of age, manufactured seven homemade bombs or hand grenades in Viscuso's cellar. The ingredients for these bombs consisted of potassium chlorate, sulfur and powdered aluminum. The potassium chlorate was purchased by Meshako at the Balletto pharmacy, the powdered aluminum was purchased at Roland T. Warner Company, a one-time defendant in this action, and the sulfur was obtained along the railroad tracks. The ingredients were poured into a conical container commonly used for brake fluid. In the top of the can was inserted a wooden dowel; at the bottom a hole was punched into which was inserted a short straw containing some of the mixture. Viscuso took four of the bombs and exploded them by igniting the straw. Meshako took the remaining three bombs and exploded two of them in the same fashion. Meshako tried to ignite the third bomb, but when it failed to explode he discarded it on a pile of trash near the side of the road on Burwell Street in New Haven. On March 6, 1958, the plaintiff Dennis Wendt, a boy of fourteen, while walking home from junior high school with two of his school chums, observed the bomb. He tried to ignite it—first by lighting the wick and throwing the bomb some twenty or thirty feet away, then by igniting some paper in close proximity to the wick—but each time

the bomb failed to ignite. At that point he tried to dislodge the stick from the can by striking the can on the pavement, whereupon the bomb exploded, injuring him very severely. The jury returned a verdict for the plaintiffs. The jury also found, in answer to interrogatories, that potassium chlorate is an intrinsically dangerous substance and that the plaintiff Dennis Wendt did not voluntarily assume the risk of injury, nor was he guilty of wilful, wanton and reckless misconduct.

Balletto's motion for judgment notwithstanding the verdict is necessarily founded on his motion for a directed verdict. *Goldberger* v. *David Roberts Corporation,* 139 Conn. 629, 634. The basis for his motion for a directed verdict was a claim that because about six or seven months earlier Meshako procured some potassium chlorate by breaking open some torpedoes which he found along the railroad tracks the jury could only guess that the potassium chlorate in the bomb came from Balletto's pharmacy. If, however, the jury were to credit Meshako's testimony both in his disclosure and on the witness stand, it was clear that the potassium chlorate which went into the seven bombs came from Balletto's pharmacy.

With respect to Balletto's motion to set aside the verdict, this memorandum will be limited to those claims which Balletto considers in his memorandum to be of primary importance.

### I

Balletto questions the admissibility of six exhibits. His objections are three pronged: first as to their competency, second as to their relevancy, third as to the failure of the court to charge with respect to the limited nature of their admissibility. Since three of the exhibits were admitted to corrob-

orate the testimony of plaintiffs' expert, they were clearly admissible under the rule of *Kaplan* v. *Mashkin Freight Lines, Inc.*, 146 Conn. 327, 331. The same applies to three exhibits which were introduced on cross-examination to impeach Balletto's expert. As to the latter exhibits, Balletto's objection went to their relevancy rather than their competency; on this ground these exhibits were plainly admissible. *Plumb* v. *Curtis*, 66 Conn. 154, 166. With respect to the claimed failure of the court to charge concerning the limited nature of the exhibits, since Balletto neither requested a charge nor took exception to the court's charge on this ground this objection need not be considered. Practice Book § 249.

## II

Balletto objects to the admissibility of certain evidence concerning potassium nitrate. On cross-examination, Balletto denied that he had ever sold any oxidizing agents to either Meshako or Viscuso. In attacking Balletto's credibility on this point, plaintiffs' counsel was permitted to introduce a statement tending to show that Balletto may have sold "salt peter" or potassium nitrate to Meshako. Balletto admitted that potassium nitrate is an oxidizing agent which is used to make explosives. Thus any admission by Balletto that he may have sold oxidizing agents to minors and specifically to Meshako could be significant. *Hill* v. *Small*, 129 Conn. 604, 605.

## III

Balletto questions the court's instructions in three particulars: first with respect to assumption of risk, second with respect to wilful, wanton and reckless misconduct, and third with respect to intrinsically dangerous substances. These will be taken up in sum and seriatim.

A critical issue in the case was the applicability of the defense of contributory negligence. Whether the defense was applicable depended on whether potassium chlorate is intrinsically dangerous. If it is, then the only defenses are wilful, wanton and reckless misconduct and voluntary assumption of risk. *Starkel* v. *Edward Balf Co.*, 142 Conn. 336, 341. The jury in answer to an interrogatory specifically found that potassium chlorate is intrinsically dangerous. Balletto, however, contends that even assuming the intrinsically dangerous character of the substance, the jury should have been instructed to find for him unless he knew or should have known that the potassium chlorate was to be used in an explosive. The difficulty with this contention is that it permits Balletto to take two inconsistent positions. Balletto's position at the trial was not that he sold an intrinsically dangerous substance to a person whom he had reason to believe was competent to handle it. His testimony rather was that he did not know Meshako, he did not sell any potassium chlorate to Meshako, and he would not have sold any potassium chlorate to a boy fourteen years old. In this regard Balletto is not entitled to pursue inconsistent positions. *Hoard* v. *Sears, Roebuck & Co.*, 122 Conn. 185, 192. Thus, he cannot complain if the court submitted the case to the jury on the basis of his denial of a sale of an intrinsically dangerous substance.

The defense of assumption of risk is multifaceted. It is not only a separate defense; it is also part and parcel of the defense of contributory negligence. In both cases, knowledge and appreciation of the risk is an essential ingredient of the defense. The only distinction between the two is the nature of the standard to be applied, whether subjective or objective. Assumption of risk as a defense to

strict liability must apply a subjective standard to the appreciation of the risk. Restatement (Second), 2 Torts § 496A, comment d. It is the plaintiff who, with knowledge of the danger, voluntarily assumes it who is denied recovery. *Hill* v. *Way,* 117 Conn. 359, 363. To subject the plaintiff in the inherently dangerous instrumentality situations to the standard of the reasonable man is to introduce, in fact, the defense of contributory negligence under a sobriquet. Strict liability is meaningless if it can be defeated by the unreasonable conduct of the reasonable man.

With respect to the defense of wilful, wanton and reckless misconduct, the question again is what conduct on the part of the plaintiff will bar recovery. Once we recognize that contributory negligence is not a defense, it follows that no conduct which in fact is merely negligent will defeat the action, whatever the label. Thus, negligent failure to discover the peril will not bar plaintiffs' recovery. *Hoffman* v. *Bristol,* 113 Conn. 386, 393; Prosser, Torts (3d Ed.), p. 539. A plaintiff who is aware of the danger will be denied recovery by his own "wanton, wilful or reckless misconduct which materially increases the probability of injury"; *Worth* v. *Dunn,* 98 Conn. 51, 62; or if his fault is so extreme as to be equivalent to invitation of injury or at least indifference to consequences. *Hoffman* v. *Bristol,* supra. To apply an objective standard to the discovery of the peril is to invoke as a matter of juristic logic the concept of the hands of Esau and the voice of Jacob. If the rule of strict liability is to be meaningful in the dangerous instrumentality situations, it should not be transformed by means of a legalistic charade. It is the plaintiffs' conduct which is of concern. The label adds nothing. See *Caporale* v. *C. W. Blakeslee & Sons, Inc.,* 149 Conn. 79, 86.

## IV

It was apparent from the number of plaintiffs' verdicts which the jury first returned that they were confused about two matters; they believed (1) they could return a verdict for the father Arthur Wendt for an amount in excess of the expenses incurred, and (2) they were free to allocate the damages among the several defendants. When they were given new instruction and were returned to reconsider their verdict, Balletto objected on the ground that it was not explained to the jury that each defendant was liable for the total amount. Balletto posed the question that if this was properly explained, the jury might return the largest of the previous verdicts. The court specifically instructed the jury as requested, and to this instruction no exception was taken by Balletto. Under these circumstances, the basis for Balletto's present complaint is a mystery.

In the light of Balletto's objections, the court has carefully reexamined the transcript of evidence and, having done so, is satisfied that the evidence fully supports the jury verdict.

Accordingly, the motions for judgment notwithstanding the verdict and to set aside the verdict are denied.