STEPHEN KOSTYAL *v.* NORMAN CASS ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued March 10—decided May 11, 1972

*Robert H. Hall,* for the appellants (defendants).

*James H. W. Conklin II,* for the appellee (plaintiff).

SHAPIRO, J. This is an action brought by the plaintiff Stephen Kostyal to recover damages from the defendant Norman Cass or, in the alternative, the defendant borough of Bantam, for the contamination of the water of his well alleged to have been caused by the leakage of oil from an aboveground oil tank located on the property of the defendant borough. The case was submitted to the jury on the substituted complaint that was allowed during the trial. The first count, directed solely against Cass, is in negligence; the second count is designed to impose liability on the borough under § 7-465 of the General Statutes for the negligence of Cass while acting in the performance of his duties and within the scope of his employment as a burgess of the borough and in charge of the maintenance of the Bantam borough hall; and the third count purports to state a cause of action against the borough sounding in nuisance. Following a jury verdict for the plaintiff against both defendants, the defendants moved to set aside the verdict and for a judgment notwithstanding the verdict. The motion was denied

and a judgment was rendered on the verdict. From the judgment the defendants have appealed, assigning as error, inter alia, (1) the denial of their motion to set the verdict aside and for judgment notwithstanding the verdict, (2) certain portions of the charge to the jury, and (3) the refusal to find facts concerning certain claims of proof.

"In reviewing the decision of the trial court on the motion to set aside the verdict and for judgment notwithstanding the verdict, we must consider the evidence in the light most favorable to the plaintiff. *Kopjanski* v. *Festa,* 160 Conn. 61, 63, 273 A.2d 692; *Lewis* v. *Kasimer,* 153 Conn. 13, 15, 211 A.2d 837; see 53 Am. Jur., Trial, § 349. We determine whether the trial court, in the exercise of a broad legal discretion, was justified in taking the action it did. *Vuono* v. *Eldred,* 155 Conn. 704, 705, 236 A.2d 470; *Joanis* v. *Engstrom,* 135 Conn. 248, 251, 253, 63 A.2d 151." *Bartholomew* v. *Catania,* 161 Conn. 130, 132, 285 A.2d 350.

From the evidence presented in the appendices to the briefs and taken in the light most favorable to the plaintiff, the jury could reasonably have found the following: The plaintiff and his family reside in a house on property which he owns on Main Street in the borough of Bantam. The adjacent property on the northeast is owned by the borough of Bantam and on it is situated the borough hall. The borough's property is at an elevation approximately twelve to fifteen feet higher than that of the plaintiff's property. The borough hall is heated by an oil-fired furnace and the fuel oil for the furnace is stored in a 275-gallon aboveground oil tank adjacent to the hall and four or five feet from the plaintiff's property. The tank rests on rocks and is connected to the furnace inside the hall's cellar by means of a three-

eighth-inch outside diameter copper tubing which rests on rocks alongside the building. The distance between the outlet of the tank and the point where the tubing enters the hall's foundation is approximately ten to twelve feet. The tank and copper tubing were installed at the direction of the borough by the defendant Norman Cass approximately seventeen years ago at a time prior to his becoming a burgess. On or about August 24, 1967, the plaintiff discovered that his well was contaminated by fuel oil. On inspection of the borough's property, the plaintiff found the copper tubing broken, the oil storage tank empty and the ground saturated with fuel oil. The pollution of his well by the fuel oil required the plaintiff to have a new well drilled on his property and connected at a cost of approximately $2414.76.

While the tank and tubing remained intact for seventeen years before the tubing broke, expert testimony indicated that the system was considered unsafe. It was elicited that it was not customary to support an aboveground oil tank on rocks since it does not afford adequate support against settling and vibration. In addition, the exposed copper tubing, which is naturally soft, should have been sleeved in steel to protect it from normal wear and tear and pedestrian traffic. Ample evidence was introduced to show that the hall is used for various borough activities and, as a result, the presence of children and adults in the vicinity of the tank and tubing had been observed on various occasions. The foregoing facts reasonably support the conclusion that the contamination of the well was caused by seepage of oil from the broken tubing.

We first consider whether the defendant Cass is legally responsible for the leakage of oil. As indi-

cated above, Cass, prior to his becoming a burgess, installed the oil tank and copper tubing in 1952. For the ten years prior to the time of trial he was one of the six burgesses of the borough of Bantam. The plaintiff sought recovery against Cass on the theory that Cass was a burgess and an agent of the borough and in charge of the maintenance of the hall, and that in performing his duties he was negligent by reason of his failure to comply with certain regulations promulgated by the state police commissioner pursuant to § 29-62 of the General Statutes,[1] and in failing to insure that the oil tank and piping system "were adequate to take care of all demands made on them under reasonably to be anticipated conditions."[2]

A careful examination of the record, however, reveals that there is no evidence to support the verdict against Cass. The record fails to disclose that he had any control whatsoever over the oil tank and tubing. Nor does the record indicate that he had any duties or responsibilities in connection with the system's maintenance except as an elected burgess. In addition, the claims of negligence based on the alleged violations of certain regulations of the state police commissioner were correctly charged out of the case since the regulations do not apply to systems installed prior to 1955, the system in question having been installed in 1952.[3] Consequently, the verdict against Cass on the first count cannot stand.

[1] Regulations of Connecticut State Agencies, §§ 29-62-12, 29-62-25.

[2] At the time the plaintiff submitted the substituted complaint, counsel for the parties agreed that the claim of negligence be limited solely to negligent maintenance of the oil tank and tubing, since any claim based on negligent installation seventeen years earlier would be barred by the Statute of Limitations.

[3] "[General Statutes] Sec. 29-62. REGULATIONS CONCERNING FLAMMABLE LIQUIDS. . . . Such regulations shall not apply to any plant or equipment constructed or established prior to July 1, 1955."

The plaintiff, by his allegations in the second count, has invoked the aid of § 7-465 of the General Statutes to require the borough to stand responsible to pay a verdict against the defendant Cass. Section 7-465, entitled "Assumption of liability for damage caused by employees," provides that in certain situations a municipality, regardless of the doctrine of governmental immunity, "shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for physical damages to person or property, . . . if the employee . . . was acting in the performance of his duties and within the scope of his employment, and if . . . [the] injury . . . was not the result of any wilful or wanton act of such employee in the discharge of such duty." See *Martyn* v. *Donlin,* 151 Conn. 402, 404, 198 A.2d 700; *Allard* v. *Hartford,* 151 Conn. 284, 286, 197 A.2d 69. As the defendant borough correctly notes, however, recovery against the borough pursuant to the statute is wholly contingent on recovery on the first count against Cass individually. "Whatever may be the full scope and effect of the statute, in no event may the municipality be held liable under it unless the municipal employee himself 'becomes obligated to pay [sums] by reason of the liability imposed upon . . . [him] by law for physical damages to person or property.' " *Martyn* v. *Donlin,* supra, 405. While § 7-465 provides an indemnity to a municipal employee from his municipal employer in the event the former suffers a judgment under certain prescribed conditions, it is quite clear that the municipality does not assume the liability in the first instance. Once a plaintiff has successfully pursued a cause of action and obtained judgment against the defendant municipal employee,

the latter can (1) pay the judgment and request re-imbursement from the municipality or (2) request the municipality to pay the judgment in his behalf. Since we have held that the verdict against Cass on the first count cannot stand, the plaintiff may not prevail on the second count under § 7-465.

The third count, directed solely against the borough, restates the same facts on which the claim of negligence in the first count is based but alleges the maintenance of a nuisance by the borough on the basis of those facts.

"It is well established that a town may be held liable for injury resulting from a nuisance created and maintained by it. *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 A. 499; *Mootry* v. *Danbury,* 45 Conn. 550, 556; *Wheaton* v. *Putnam,* . . . [126 Conn. 330, 335, 11 A.2d 358]; see *Carabetta* v. *Meriden,* 145 Conn. 338, 340, 142 A.2d 727; *Beckwith* v. *Stratford,* 129 Conn. 506, 510, 29 A.2d 775." *Marchitto* v. *West Haven,* 150 Conn. 432, 437, 190 A.2d 597. "This liability cannot be avoided on the ground that the municipality was exercising governmental functions or powers, even in jurisdictions where, as here, immunity is afforded from liability for negligence in the performance of such functions." *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 A. 499; *Prifty* v. *Waterbury,* 133 Conn. 654, 657, 54 A.2d 260; *Bacon* v. *Rocky Hill,* 126 Conn. 402, 407, 11 A.2d 399. "Actions against public authorities founded upon nuisance . . . fall into three general classes: (1) nuisances which result from conduct of the public authority in violation of some statutory enactment; (2) nuisances which are intentional in the sense that the creator of them intended to bring about the conditions which can be found as a fact to constitute a nuisance; and (3) nuisances which have their origin in negligence, that

is, in the failure of the creator of the conditions constituting a nuisance to exercise due care." *Carabetta* v. *Meriden,* 145 Conn. 338, 339–40, 142 A.2d 727. In the case at bar, while the plaintiff's alleged cause of action, based on nuisance, falls within the third class, the only practical distinction between an absolute nuisance and one grounded in negligence is that contributory negligence is not a defense to the former but may be as to the latter; *Warren* v. *Bridgeport,* 129 Conn. 355, 360, 28 A.2d 1; a consideration not material to the disposition of this case.

" 'Nuisance is a word often very loosely used; it has been not inaptly described as "a catchall of ill-defined rights." In its proper use, however, it involves as an essential element that it can be the natural tendency of the act or thing complained of to create danger and inflict injury upon person or property. *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 A. 499.' *Gonchar* v. *Kelson,* 114 Conn. 262, 271, 158 A. 545; *Brock-Hall Dairy Co.* v. *New Haven,* 122 Conn. 321, 326, 189 A. 182; *DeLahunta* v. *Waterbury,* 134 Conn. 630, 634, 59 A.2d 800. 'To constitute a nuisance in the use of land, it must appear not only that a certain condition by its very nature is likely to cause injury but also that the use is unreasonable or unlawful.' . . . Whether or not the particular condition of which the plaintiffs complain constituted a nuisance 'does not depend merely upon the inherent nature of the condition, but involves also a consideration of all relevant facts, such as its location, its adaptation to the beneficial operation of the property, the right of members of the public to go upon the land adjacent to it, and the use to which they would naturally put that land.' *Balaas* v. *Hartford,* 126 Conn. 510, 514, 12 A.2d 765; *Prifty* v. *Waterbury,* 133 Conn. 654, 658, 54 A.2d 260." *Laspino* v.

*New Haven,* 135 Conn. 603, 604–5, 67 A.2d 557; see *Marchitto* v. *West Haven,* 150 Conn. 432, 437, 190 A.2d 597; *Chazen* v. *New Britain,* 148 Conn. 349, 355, 170 A.2d 891; *Carabetta* v. *Meriden,* supra, 339. A further necessary element is that "the danger created must have been a continuing one," as opposed to a single act. *Bush* v. *Norwalk,* 122 Conn. 426, 428, 189 A. 608; see *Marchitto* v. *West Haven,* supra; *Chazen* v. *New Britain,* supra; *Warren* v. *Bridgeport,* supra, 358. Finally, it is "essential to liability that the existence of the nuisance was the proximate cause of the plaintiff's injuries and damage." *Chazen* v. *New Britain,* supra; see *Laspino* v. *New Haven,* supra, 605; *DeLahunta* v. *Waterbury,* supra, 634, and cases cited. Whether the abovementioned elements are present so that a nuisance can be said to exist are questions of fact for the trier. *Chazen* v. *New Britain,* supra, 355; *DeLahunta* v. *Waterbury,* supra, 635, and cases cited.

Applying these principles to the case at bar, we hold that the jury could reasonably have found that installing and maintaining the soft, unsleeved copper tubing above ground in light of the surrounding circumstance that it was located in an area where people were likely to congregate, resulted in an unreasonable and continuing condition, the natural tendency of which was to create a dangerous situation likely to result in injury to persons or property. As noted above, ample evidence was introduced to show, inter alia, (1) copper tubing is naturally soft; (2) safe installation would require either the tubing to be buried or sleeved in steel to prevent breaking or rupturing; (3) the need for sleeving or burying was essential in situations where, as here, the tubing would be exposed to pedestrian traffic; (4) the hall was used by any nonprofit organization free of

charge; (5) all school children from the town of Litchfield and the borough of Bantam have free access to it free of charge and (6) people had been observed in the area of the tubing on various occasions. We are unable to say as a matter of law that the condition described did not amount to a nuisance. The jury could reasonably have found a nuisance and this conclusion is not subject to change by us.

Error is assigned in the court's refusal to charge the jury as requested by the defendants. The defendants requested that the jury be charged with regard to the first count, in negligence, that for a condition to be "reasonably anticipated," it should be more likely than not to occur. Since we are directing a verdict in favor of the defendants on the negligence count, we find it unnecessary to discuss the merits of this claim because even if erroneous the error would be harmless. *Attardo* v. *Connecticut Ry. & Lighting Co.*, 144 Conn. 741, 742–43, 132 A.2d 70.

The defendants also requested the court to charge as follows: "The defendants claimed to have proved . . . that the fuel line was broken by the action of a person or persons unknown in bending the tubing back and forth until it broke. Since the essence of a nuisance depends on the tendency of the object maintained to inflict damage in the condition in which it is maintained . . . the intervention of a person or persons unknown to break the tubing and change that condition would necessarily be an intervening cause which would prevent the original nuisance, if you find any, from being a legal cause of . . . [the plaintiff's] damage. . . . Therefore, if you find that the tubing was, in fact, broken by a person or persons unknown, you must find in favor

of the Borough on the Third Count." The request does not state, however, a correct principle of law applicable to the facts of this case. While the record does indicate that the tubing may have been broken due to repeated bending by some person, it does not necessarily follow that such an act by a person or persons unknown would in all circumstances bar recovery against the borough and require a jury so to find. The breaking of the tubing by a person might lead a jury to conclude that such action was or was not an intervening cause of the breaking of the tube which may or may not break the legal chain of causation. The court did not err in failing to grant the request as submitted by the defendants. "As the request to charge misstated . . . the law, it was certainly not error for the court to refuse to give it. *Bernard* v. *Ribner,* 151 Conn. 670, 673, 201 A.2d 658; *Crowder* v. *Zion Baptist Church, Inc.,* 133 Conn. 90, 100, 119 A.2d 736." *Penna* v. *Esposito,* 154 Conn. 212, 214, 224 A.2d 536. Furthermore, the court fully and adequately charged on the principles of causation and the substantial factor test for the determination of proximate cause, concluding its instruction on this point: "Only if you conclude that there was a nuisance, that the defendant was responsible for its existence or maintenance, that the harm to the plaintiff was such as the nuisance was likely to produce, and that the nuisance was the cause of that harm, can you render a verdict for the plaintiff under these circumstances."

One final point deserves our consideration for a proper disposition of this case. As a result of the contamination of his well by the fuel oil, the plaintiff incurred expenses of $2304.76 for well drilling and equipment and $110 for excavation, a total of $2414.76. In addition, the plaintiff alleged in para-

graph 11 of the first count in negligence that he had been without a decent water system for over two months causing great inconvenience and discomfort to himself and to his family. Such injuries are compensable; *Krulikowski* v. *Polycast Corporation,* 153 Conn. 661, 669, 220 A.2d 444; and the jury, in awarding a verdict of $3000, an amount $585.24 over actual out-of-pocket expenses, obviously took these factors into consideration. The first count, where these injuries were alleged, however, was directed in favor of the defendants and the third count, in nuisance, while alleging damage to property and incorporating the first eight paragraphs of count one, failed to incorporate or include any paragraph concerning the lack of a decent water supply, inconvenience, and discomfort. Having failed to allege these injuries, the verdict of $3000 must be reduced by $585.24, to a total of $2414.76.

There is error in the judgment. The verdict on the first count against Norman Cass and the verdict on the second count against the borough of Bantam are set aside and judgment may be rendered pursuant to their motion for a judgment notwithstanding the verdict. As to the verdict on the third count against the borough of Bantam, there is error in the amount of the judgment only, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover $2414.76 from the borough.

In this opinion the other judges concurred.