GERARD BALAAS *v.* CITY OF HARTFORD.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued January 3—decided April 16, 1940.

*Leon RisCassi,* with whom, on the brief, was *William P. Averill,* for the appellant (plaintiff).

*Harold Borden,* with whom, on the brief, was *Vincent W. Dennis,* for the appellee (defendant).

JENNINGS, J.   The plaintiff and a young lady by the name of Margaret A. Takeman were injured while they were respectively sliding and skiing in a public park under the control of the park commissioners of the defendant city.   Both brought suit claiming that, under the circumstances, the city maintained a nuisance, and judgment was rendered for the defendant in each case.   The plaintiffs appealed.   The parties stipulated that the issues in the two suits were the same, that the record in the Balaas suit only should be printed and that the decision should control the result in the Takeman case.

The undisputed facts in the finding are as follows: Goodwin Park is one of several in Hartford devoted to public use and owned by the city.   In connection with other public parks it is under the management, care and control of the board of park commissioners. Certain portions of Goodwin Park have been laid out

or adapted for use for particular athletic or recreational purposes, for instance, a playground, miniature boat racing, tennis, baseball, skating, and golf.

The portion of the park which is involved in this accident is bounded on the west by a drive affording access from Maple Avenue. About one hundred and sixty feet east of the easterly line of this avenue there is a ledge with a fifteen foot drop. This resulted from a quarrying operation which took place more than forty years ago. In laying out and beautifying the park it was sought to take advantage of its presence as a factor in the landscape. It is also a natural hazard in connection with the municipal golf field. The land between the ledge and the avenue is comparatively flat and slopes gently down toward the ledge. The ledge is not visible either in the daytime or at night to one standing on the easterly edge of the drive. Until 1932 no sliding was done in the park, and since that time it has been restricted to the area east of the drive and north of a light pole situated to the north of the north edge of the ledge. The slope in this section is much steeper than that between the drive and the ledge but is not marked off by barrier or otherwise from the portion to the south of it. It would, however, from its grade, appeal to anyone intent on such sport as adapted to the purpose, as the comparatively flat area to the south would not.

When sliding was engaged in an employee of the park board was stationed to maintain order and prevent injury to anyone taking part in it. Such a man was stationed there on the night when this injury occurred, February 5, 1937, as several children were engaged in sliding in the area described as adapted for that purpose. About 7.30 the plaintiff and his companion, Miss Takeman, drove in together to slide and ski. Miss Takeman did not know much about skis

and after they had looked the place over they selected the area south of the light pole to ski and slide because that would be apart from where the children were sliding, and because the incline was very slight. The plaintiff helped Miss Takeman put on the skis and left her standing while he went back to get his sled. While he was on the way to the car the skis began to move and eventually precipitated Miss Takeman over the ledge to the ground below. When the plaintiff returned with his sled he did not see Miss Takeman so he followed her ski marks, with the same result. The plaintiff and Miss Takeman had played golf in Goodwin Park but neither knew of the ledge nor did they see it until after the accident.

The court concluded that there was no general invitation to the public to use Goodwin Park for sliding or skiing; that such invitation as there was to use the park for sliding was confined to the part north of the light pole; that there was no invitation to the public to use any part of the park for skiing; that the plaintiff and his companion were at most licensees; that they took the premises in the condition in which they were; that there would be no liability on the defendant's part in the absence of active negligence, which did not exist; that the conditions described were not dangerous to persons in the lawful use of the park and did not constitute a nuisance as a matter of law or fact; and that neither the plaintiff nor Miss Takeman was guilty of contributory negligence.

The experience of many years, crystallized in the rules for appellate procedure, has resulted in a settled method for determining the validity of a judgment after a trial to the court. The first consideration is the correctness of the finding. The plaintiff has abandoned his first twenty-five assignments of error, and none of the facts and conclusions detailed above are

questioned. True, the assignments of error attack two of the court's other conclusions but they can be omitted without materially affecting the finding and conclusions as summarized above. It follows that the finding stands.

No rulings during the trial being complained of, the only remaining question is whether the finding supports the judgment. Whether or not in a situation like the one before us a particular condition upon property constitutes a nuisance does not depend merely upon the inherent nature of the condition, but involves also a consideration of all relevant facts, such as its location, its adaptation to the beneficial operation of the property, the right of members of the public to go upon the land adjacent to it, and the use to which they would naturally put that land. *State* v. *Kievman,* 116 Conn. 458, 465, 165 Atl. 601; *Murphy* v. *Ossola,* 124 Conn. 366, 371, 199 Atl. 648; *Cleveland* v. *Walker,* 52 Ohio App. 477, 482, 3 N. E. (2d) 990; 1 Street, Foundations of Legal Liability, 218; 46 C. J. 656. There is no finding that anyone had ever skied in the park before, that the place where the accident occurred had ever been used for either sliding or skiing, or that there was any reason for the defendant to anticipate such use by anyone. Being comparatively flat, it was no more likely to be used for sliding or skiing than any other field. We cannot hold the conclusion of the court that the condition described was not dangerous to persons in the lawful use of the park for the purposes to which it was devoted and did not constitute a nuisance was not one which it could reasonably reach. It was a question of fact and if, as stated, it was reasonably reached it was not reviewable. *Murphy* v. *Ossola,* supra, 372; *Andrews* v. *Bristol,* 120 Conn. 499, 503, 181 Atl. 624; *Stowe* v. *Miles,* 39 Conn. 426, 428. Since this conclusion is decisive

of the case it is unnecessary to consider the other claims of the plaintiff.

There is no error.

In this opinion AVERY and BROWN, Js., concurred; MALTBIE, C. J., and HINMAN, J., dissented.