******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ELGO, J., concurring in part and dissenting in part. In ruling on a motion to set aside a verdict, the trial court is endowed with a broad legal discretion that shall not be disturbed absent clear abuse. *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 776, 83 A.3d 576 (2014); see also *Ulbrich v. Groth*, 310 Conn. 375, 414, 78 A.3d 76 (2013) (every reasonable presumption must be given in favor of correctness of court's exercise of discretion to deny motion to set aside). In the present case, the plaintiff, Gregg Fisk, claims that the court abused that discretion due to the presence of allegedly inconsistent responses to certain interrogatories by the jury. Such a claim requires this court to attempt to harmonize the jury's answers while giving the evidence the most favorable construction that reasonably supports its verdict. *Norrie* v. *Heil Co.*, 203 Conn. 594, 606, 525 A.2d 1332 (1987). Guided by that standard, I would conclude that the trial court did not abuse its discretion in this case because the jury's responses to the interrogatories in question can be harmonized in accordance with established nuisance jurisprudence. I therefore respectfully dissent from the majority's conclusion to the contrary.

The standard of review governing the plaintiff's claim is well settled. In *Norrie* v. *Heil Co.*, supra, 203 Conn. 605–606, our Supreme Court articulated the standard of review applicable to a claim that the jury's responses to interrogatories are internally inconsistent with each other. It stated: "Our [review] is extremely limited. The trial court's refusal to set aside the verdict is entitled to great weight in our assessment of the claim that its decision is erroneous. . . . The evidence and record must be given the most favorable construction in support of the verdict which is reasonable. . . . It is not the function of a court to search the record for conflicting answers in order to take the case away from the jury on a theory that gives equal support to inconsistent and uncertain inferences. When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." (Citations omitted.) Id., 606; accord *Earlington* v. *Anastasi*, 293 Conn. 194, 203, 976 A.2d 689 (2009).

In this public nuisance action, the jury was presented with seven interrogatories. See footnote 4 of the majority opinion. Relevant to this appeal are its responses to the first and third interrogatories. The first interrogatory asked whether the plaintiff had proven "that the condition complained of, the subject retaining wall, was inherently dangerous in that it had a natural tendency to inflict injury on person or property"; the jury answered "Yes." The third interrogatory inquired whether the

plaintiff had proven "that the Defendant's use of the land was unreasonable or unlawful"; the jury answered "No." In accordance with the court's instructions,[1] the jury, after answering that interrogatory in the negative, proceeded to return a verdict in favor of the defendant town of Redding.[2] On appeal, the plaintiff maintains that those responses are internally inconsistent with each other and "plainly contradictory." I do not agree.

The first interrogatory required the jury to determine whether the retaining wall *itself* was inherently dangerous. It is well established that an interrogatory presented to a jury must be read "in conjunction" with the instruction provided by the court. *Norrie* v. *Heil Co.*, supra, 203 Conn. 605. In its charge to the jury, the court instructed that "[i]t is the condition *itself* which must have a natural tendency to create danger and inflict injury." (Emphasis added.) Because under our law the jury is presumed to follow the court's instructions absent an indication to the contrary; *Wiseman* v. *Armstrong*, 295 Conn. 94, 113, 989 A.2d 1027 (2010); we must presume that the jury in this case considered whether the retaining wall itself was inherently dangerous. The jury answered the query in the affirmative.

After making that initial finding, the jury also was required to determine whether the use of the land in question was unreasonable, insofar as it interfered with a right common to the general public.[3] See *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 183, 527 A.2d 688 (1987); 4 Restatement (Second), Torts § 821B (1) (1979). Unlike the first interrogatory, which required the jury to determine whether the retaining wall *itself* was inherently dangerous, the inquiry under the third interrogatory required the jury to consider whether the use of the land on which the retaining wall was erected was unreasonable in light of the surrounding circumstances.[4] As this court has observed, in the public nuisance context, all of the surrounding factors must be considered to ascertain whether the use of land in a given instance constitutes an unreasonable interference with a public use. See *Kumah* v. *Brown*, 160 Conn. App. 798, 805–806 n.5 and n.6, 126 A.3d 598, cert. denied, 320 Conn. 908, 128 A.3d 953 (2015).

That precept is well ingrained in our law. As our Supreme Court noted more than half a century ago, reasonableness must be determined in light of the particular "circumstances of the case."[5] *Wetstone* v. *Cantor*, 144 Conn. 77, 80, 127 A.2d 70 (1956); see also *Nicholson* v. *Connecticut Half-Way House, Inc.*, 153 Conn. 507, 510, 218 A.2d 383 (1966) ("[a] fair test of whether a proposed use constitutes a nuisance is the reasonableness of the use of the property in the particular locality under the circumstances of the case" [internal quotation marks omitted]). The precedent of this state's highest court thus instructs that "[u]nreasonableness cannot be determined in the abstract, but, rather, must be judged

under the circumstances of the particular case." *Pestey* v. *Cushman*, 259 Conn. 345, 352–53, 788 A.2d 496 (2002); see also *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 457, 736 A.2d 811 (1999) (concluding that trial court properly instructed jury that it "must consider many factors in determining the reasonableness of use"); *Nair* v. *Thaw*, 156 Conn. 445, 452, 242 A.2d 757 (1968) (citing 4 Restatement, Torts § 826, comment [b] [1939], for proposition that "[d]etermining unreasonableness [in the nuisance context] is essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards" [internal quotation marks omitted]); *Cyr* v. *Brookfield*, 153 Conn. 261, 266, 216 A.2d 198 (1965) (reasonableness measured "under all the circumstances").

Almost eighty years ago, our Supreme Court explained that "[w]hether . . . a particular condition upon property constitutes a [public] nuisance does not depend *merely upon the inherent nature of the condition*, but involves also a consideration of all relevant facts, such as its location, its adaptation to the beneficial operation of the property, the right of members of the public to go upon the land adjacent to it, and the use to which they would naturally put that land." (Emphasis added.) *Balaas* v. *Hartford*, 126 Conn. 510, 514, 12 A.2d 765 (1940). For that reason, the trial court in the present case properly instructed the jury with respect to the third interrogatory that "[i]n making a determination concerning the reasonableness of the use of the land, all the surrounding factors must be considered." See *Kumah* v. *Brown*, supra, 160 Conn. App. 806 n.6 ("[t]he jury . . . was properly instructed to consider all of the [surrounding] circumstances").

Accordingly, in considering the third interrogatory regarding the reasonableness of the defendant's use of the land, the jury was not confined to a review of the retaining wall in isolation. Rather, the jury was required to "take into account a multiplicity" of surrounding factors; *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 457; including "both the general activity [on the land] and what is done about its consequences." (Internal quotation marks omitted.) Id., 459. In the present case, the jury had before it evidence of the necessity and, hence, utility, of the retaining wall, as it was constructed to replace an existing retaining wall and meant to preserve the public's right to traverse Main Street below, particularly pedestrians, bicyclists, and joggers. The jury also heard testimony that the retaining wall, as built, fully complied with the Connecticut State Building Code, which governs the construction of retaining walls in this state. The plaintiff does not suggest otherwise in this appeal.

The jury also was presented with an abundance of documentary and testimonial evidence, including sev-

eral photographs of the land in question, indicating that both a guardrail barrier and a dense landscaping buffer separated the retaining wall from the adjacent parking lot, from which it is undisputed that the plaintiff entered the land. In this regard, I reiterate that the applicable standard of review requires this court to view that evidence in the light most favorable to the verdict delivered by the jury and to make all reasonable inferences consistent therewith. *Norrie* v. *Heil Co.*, supra, 203 Conn. 606. James Fielding, who served as the project manager and oversaw construction of the retaining wall, testified at trial that installing a fence on the retaining wall "was never discussed" because the defendant "had the guardrail in place serving to protect vehicles and pedestrians." Beyond that, the plaintiff's own expert witness, forensic engineer Richard Ziegler, conceded at trial that the guardrail barrier was an effective means of keeping people out of the area between the retaining wall and the parking lot.[6]

The jury also heard uncontroverted testimony that, between May and August, 2011, the plaintiff frequently patronized the Lumberyard Pub, whose parking lot abuts the land in question, as often as twice a week. The plaintiff testified that, on *every* occasion prior to the events of August 27, 2011, he walked down the paved parking lot to exit the Lumberyard Pub.[7] The plaintiff's own testimony supports the conclusion that the defendant's use of the land was objectively reasonable because the plaintiff's conduct on every other occasion he frequented the Lumberyard Pub[8] illustrates that he had recognized the defendant's use of the guardrail barrier and the landscaping buffer as signals to the public that they should not traverse the land in question.[9]

Under Connecticut law, a nuisance claim requires consideration of not only the defendant's use of the land in erecting the retaining wall, but also "what [was] done about its consequences." (Internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 459. On the evidence presented at trial, the jury reasonably could determine that the defendant's installation of both the guardrail barrier and the landscaping buffer to separate the retaining wall from pedestrian access in the parking lot were protective measures aimed at mitigating any adverse consequences of an otherwise dangerous retaining wall.[10]

Such surrounding circumstances are highly relevant to the jury's consideration of the reasonableness of the defendant's use of the land in question. For example, in *Kumah* v. *Brown*, supra, 160 Conn. App. 800, 802, at issue was the reasonableness of a fire truck positioned diagonally across the middle and right travel lanes of a highway, which, the plaintiff alleged, created a public nuisance. In affirming the trial court's refusal to set

aside the jury's verdict, this court addressed the reasonableness element of a public nuisance claim. In so doing, this court focused not only on the inherently dangerous condition, but also on the surrounding circumstances. The court emphasized that firefighters had activated "flashing lights" and had "placed cones as warnings to approaching traffic." Id., 800–801; see also id., 806 n.6 ("[t]he jury may well have decided . . . that the social utility of guarding the scene with, inter alia, flashing lights was great"). In light of those surrounding circumstances, this court concluded that the jury could have found that the use of the property "was not unreasonable overall . . . ." Id., 806.

In the present case, I likewise would conclude that the jury had an adequate evidentiary basis to conclude that the defendant's use of the land did not constitute an unreasonable interference with a right common to the general public when viewed in light of the surrounding circumstances.[11] The retaining wall, while inherently dangerous, was constructed in full compliance with the Connecticut State Building Code. The defendant installed both a guardrail barrier and a landscaping buffer to shield the retaining wall from the adjacent parking lot. The jury reasonably could infer, from the plaintiff's own testimony that he did not attempt to traverse the land in question during *any* of his numerous visits to the Lumberyard Pub prior to the night in question, that the guardrail and landscaping buffer provided an effective barrier from pedestrian traffic. Moreover, the plaintiff's own expert testified at trial that the guardrail, in particular, provided adequate notice and was an effective means of keeping people out of the area between the retaining wall and the parking lot. See footnote 6 of this opinion. The admitted efficacy of that barrier provides a basis on which the jury could conclude that, notwithstanding the inherent dangerousness of the retaining wall itself, the defendant's use of the land was not unreasonable in light of the surrounding circumstances.[12]

In reviewing a claim of internally inconsistent interrogatory answers, we are obligated to harmonize those answers to the extent practicable while giving the evidence the most favorable construction that supports the jury's ultimate verdict. See *Norrie* v. *Heil Co.*, supra, 203 Conn. 606. We are not permitted to search the record for conflicting answers in order to take the case away from the jury on a theory that gives equal support to inconsistent and uncertain inferences. Id. In its memorandum of decision denying the plaintiff's motion to set aside the verdict, the court specifically found that "there was sufficient evidence to permit the jury to make a factual determination regarding the reasonableness element and thereby render a verdict in favor of the defendant—the court finds that the jury's responses to [the] interrogatories are neither inconsistent nor contrary to the law." I believe that, having applied the

appropriate legal standard given the evidence before the jury, the trial court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict of the jury. I therefore respectfully dissent from part I of the majority opinion.

[1] In this appeal, the plaintiff has raised no claim with respect to the propriety of the court's instructions to the jury.

[2] The complaint named other defendants that are not involved in this appeal. References in this opinion to the defendant are to the town of Redding.

[3] Although both the third interrogatory and the court's charge to the jury also referenced unlawfulness, there was no evidence presented at trial, nor any claim by the plaintiff, that the use of the land was unlawful. I therefore confine my review to the issue of reasonableness. See *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 449 n.4, 736 A.2d 811 (1999) ("the determinative portion of this element [of a nuisance action] was whether the use . . . was reasonable").

[4] For that reason, I reject the plaintiff's suggestion that a finding that the land in question was inherently dangerous precludes a finding by the jury that the defendant's use of the land in question was reasonable. The relevant inquiries under the first and third interrogatories are distinct and have been well established under our law for the better part of a century. See, e.g., *Beckwith* v. *Stratford*, 129 Conn. 506, 508, 29 A.2d 775 (1942) ("[t]o constitute a nuisance in the use of land, it must appear not only that a certain condition by its very nature is likely to cause injury but also that the use is unreasonable or unlawful").

[5] In *Peterson* v. *Oxford*, 189 Conn. 740, 745–46, 459 A.2d 100 (1983), our Supreme Court similarly described the application of a reasonableness standard as "a weighing analysis" that entails consideration of "all the relevant circumstances" and factors. See also *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 580, 657 A.2d 212 (1995) ("[w]e have consistently held that reasonableness is a question of fact for the trier to determine based on all of the circumstances").

[6] At trial, the following colloquy occurred:

"[The Defendant's Counsel]: The [existing] guardrail, it's made of heavy block wood; is that right?

"[Ziegler]: Yes.

"[The Defendant's Counsel]: And a structure like this one [that] we're looking at, certainly sends the message to people over here that they are not supposed to go over in that direction, doesn't it?

"[Ziegler]: Correct.

"[The Defendant's Counsel]: And . . . correct me if I'm wrong, but the guardrail is an effective means of keeping people from the parking lot over here from going into the area where the high parts of the wall are, correct?

"[Ziegler]: Yes.

"[The Defendant's Counsel]: That was your word, an effective means of keeping people from going in; correct?

"[Ziegler]: Yes."

[7] The uncontroverted evidence before the jury established that, at all relevant times in 2011, the plaintiff lived one-half mile away from the land in question and knew that there was a drop in elevation from the top of the retaining wall. The evidence also indicates that the plaintiff was very familiar with the land in question. He previously had worked in that area of the town for seven years, at which time a timber retaining wall was present on that land. There is no indication in the record that the plaintiff ever attempted to traverse either the timber retaining wall or the replacement retaining wall at any time during those seven years or in 2011, apart from the early morning hours of August 27, 2011, when he was in an admittedly intoxicated condition. As the plaintiff acknowledged at trial, he "never once went over [the] retaining wall prior to that night . . . ."

Moreover, the plaintiff offered no evidence that *anyone* ever traversed the retaining wall prior to the events of August 27, 2011. In this regard, I believe the present case is strikingly similar to *Balaas* v. *Hartford*, supra, 126 Conn. 514, in which "[t]here [was] no finding that anyone had ever [previously used the land in question as the plaintiff did], that the place where the accident occurred had ever been used [in that manner], or that there was any reason for the defendant to anticipate such use by anyone."

[8] I fully agree with the majority that such evidence is not relevant to the question of the plaintiff's contributory negligence in this public nuisance

case. Rather, I highlight such evidence because I believe it further substantiates a finding by the jury that the defendant took reasonable measures to alert pedestrians of ordinary prudence that the land in question was not to be traversed.

[9] In his operative complaint, the plaintiff alleged that the defendant had erected the retaining wall without any "protective fencing." In its answer, the defendant denied the truth of that allegation. As such, the factual question of whether any protective fencing existed was in dispute and one for the jury, as finder of fact, to ultimately decide. Because the jury was presented with ample documentary and testimonial evidence that both a guardrail barrier and a landscaping buffer separated the parking lot from the retaining wall, as well as testimony from the defendant's project manager that the guardrail barrier was installed "to protect vehicles and pedestrians," I believe the jury reasonably could conclude that protective fencing was, in fact, present on the land, insofar as fencing is defined as "a barrier intended to prevent . . . intrusion or to mark a boundary" and "something resembling a fence in appearance or function." See Webster's Third New International Dictionary (2002) p. 837. Such a finding is consistent with the verdict rendered by the jury in favor of the defendant.

[10] At oral argument before this court, Judge Sheldon noted two distinct ways that a property owner may deal with an inherently dangerous condition, stating: "One way is to get rid of the problem. That is, to actually fix it. The other way is to give adequate warning of it or to fence it off so that people don't go there." Both at trial and in this appeal, the defendant has maintained that the installation of the guardrail barrier accomplished the latter.

[11] The plaintiff has not specified, in either his appellate briefs or at oral argument before this court, precisely what "right common to the general public" is implicated here. Presumably, his claim is predicated on a right to freely traverse an area of land that historically—and at all times relevant to this case—has contained a retaining wall.

[12] I also would conclude that the plaintiff's reliance on *Bilodeau* v. *Bristol*, 38 Conn. App. 447, 661 A.2d 1049, cert. denied, 235 Conn. 906, 665 A.2d 899 (1995), is misplaced. Unlike the present case, *Bilodeau* did not involve internally inconsistent interrogatory answers by the jury but, rather, concerned "an apparent inconsistency between the jury's answer to one of the interrogatories submitted to it and the plaintiff's verdict." Id., 450. In that case, the jury could only return a plaintiff's verdict if it had "answered all six interrogatories in the affirmative . . . ." Id., 455. After answering one of the six interrogatories in the negative, the jury nonetheless delivered a verdict in favor of the plaintiff, and the court thereafter directed a verdict in favor of the defendant. Id., 452–54.

On appeal, this court expressly stated that its ruling was predicated on the particular "circumstances of this case . . . ." Id., 456. This court emphasized that the trial court "did not expressly charge the jury that it must answer all of the interrogatories in the affirmative in order to find for the plaintiff. This failure further evidences the jury's unawareness or confusion regarding the relationship between the interrogatories and the verdict." Id., 453 n.5. The trial court's failure to so instruct the jury, coupled with the remedial mandate of General Statutes § 52-223, led this court to observe that "considering the fact that the trial court had not specifically instructed the jury that it needed to answer all of the interrogatories in the affirmative in order to return a plaintiff's verdict, caution dictated that the jury be so instructed and given an opportunity to make its verdict clear" before the court directed a verdict in favor of the defendant. Id., 455.

In the present case, by contrast, there is no claim that the jury's responses to the interrogatories are inconsistent with the verdict that it returned in favor of the defendant. Furthermore, the plaintiff has never claimed any impropriety in the instructions furnished by the trial court and has not briefed such a claim in this appeal. *Bilodeau*, therefore, has little relevance to the present case.