******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GREGG FISK *v.* TOWN OF REDDING ET AL.
(SC 20333)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn, and Ecker, Js.*

*Syllabus*

The plaintiff, who sustained injuries when he fell off a retaining wall con-
structed by the defendant town, sought to recover damages from the
town. He claimed that the town created a public nuisance by constructing
the wall without a fence on top of it. Following a trial, the jury returned
a verdict in favor of the town. Thereafter, the plaintiff filed a motion
to set aside the verdict, claiming that the jury's responses to certain
interrogatories, in which it indicated that it had found that the wall
was an inherently dangerous condition but was not an unreasonable or
unlawful use of the land, were inconsistent. The trial court denied the
motion and rendered judgment in accordance with the verdict, from
which the plaintiff appealed to the Appellate Court. The Appellate Court
concluded that, as a matter of law, the jury could not have determined
that the retaining wall without a fence was both inherently dangerous
and not an unreasonable use of the land. The Appellate Court further
concluded that the wall constituted an unreasonable use of the land
because it was inherently dangerous and lacked any social utility.
Accordingly, the Appellate Court reversed the trial court's judgment and
remanded the case for a new trial. On the granting of certification, the
town appealed to this court. *Held* that the Appellate Court incorrectly
concluded that the trial court had abused its discretion by denying the
plaintiff's motion to set aside the verdict, as the jury's responses to
the special interrogatories could be harmonized in light of this court's
established public nuisance jurisprudence: the proper inquiry for
determining the reasonableness of a defendant's use of the land is not
whether the inherently dangerous condition alone is reasonable, but
whether the defendant's use of the land constitutes a reasonable use in
light of the surrounding circumstances, and the Appellate Court improp-
erly focused its inquiry solely on the condition at issue and ignored the
multiplicity of factors that the jury could have considered in determining
that, despite the inherent dangerousness of the wall, the town's use of
the land, when considered in context, was reasonable; moreover, the
jury could have reasonably concluded that the town's use of the land
was reasonable in light of the benefits of the wall, the steps the town
took to mitigate the danger posed by the wall, such as the placement
of a guardrail and dense vegetation between the adjacent parking lot
and the wall, and the absence of any evidence that other individuals
had fallen from the wall prior to the plaintiff's accident.

Argued April 27—officially released November 9, 2020**

*Procedural History*

Action to recover damages for public nuisance,
brought to the Superior Court in the judicial district of
Fairfield and tried to the jury before *Kamp, J.*; verdict
for the named defendant; subsequently, the court
denied the plaintiff's motions to set aside the verdict
and for a new trial, and rendered judgment in accor-
dance with the verdict, from which the plaintiff
appealed to the Appellate Court, *Sheldon*, and *Flynn*,
*Js.*, with *Elgo, J.*, concurring in part and dissenting in
part, which reversed the judgment of the trial court and
remanded the case for further proceedings, and the
named defendant, on the granting of certification,
appealed to this court. *Reversed*; *judgment directed*.

*Thomas R. Gerarde*, with whom were *Eric E. Ger-*

*arde*, and, on the brief, *Beatrice S. Jordan*, for the appellant (named defendant).

*A. Reynolds Gordon*, with whom, on the brief, was *Frank A. DeNicola*, *Jr.*, for the appellee (plaintiff).

*Opinion*

KAHN, J. This certified appeal requires us to consider whether the jury's verdict in this case contains a fatal inconsistency between two special interrogatories relating to a count alleging absolute public nuisance, one finding that a particular condition on the land was inherently dangerous and the other finding that the defendant's use of the land was reasonable. The plaintiff, Gregg Fisk, brought the present action against the named defendant, the town of Redding,[1] alleging that a specific retaining wall located outside of a local pub should have been guarded by a fence and that the absence of such a fence constituted a public nuisance and caused him to sustain personal injuries. The defendant appeals from the judgment of the Appellate Court, which reversed the judgment rendered in favor of the defendant and remanded the case for a new trial. *Fisk* v. *Redding*, 190 Conn. App. 99, 113, 210 A.3d 73 (2019). Specifically, the defendant claims that the Appellate Court incorrectly concluded that the trial court abused its discretion when it denied the plaintiff's motion to set aside the verdict, which had claimed that the jury's response to the first special interrogatory—that the unfenced retaining wall was inherently dangerous— was fatally inconsistent with its response to the third special interrogatory that the defendant's use of the land was reasonable. Id., 103, 112. Because we conclude that the jury's answers to the first and third special interrogatories can be harmonized in light of our established nuisance jurisprudence, we conclude that the Appellate Court incorrectly concluded that the trial court had abused its discretion by denying the plaintiff's motion to set aside the verdict. We, therefore, reverse the judgment of the Appellate Court.

The jury reasonably could have found the following relevant facts. The retaining wall in question was constructed as a part of the defendant's Streetscape Project (project), which was funded by federal and state grants.[2] This retaining wall is located at one end of a parking lot used by the Lumberyard Pub (pub) in the town of Redding. The primary entrances and exits of that parking lot are connected to Route 57, which borders the parking lot on one side. The retaining wall runs between the parking lot and the intersection of Route 57 and Main Street. That intersection sits partially below the parking lot due to the downward slope of the land and the construction of the retaining wall. To the right of the exit to the parking lot, as Route 57 moves downhill toward Main Street, there is an "area of refuge" between Route 57 and the granite curb. The "area of refuge" is separated from Route 57 by a white line and is designed to be used by pedestrians, bicyclists, and joggers as they approach the intersection of Route 57 and Main Street.

The construction of the retaining wall was supervised by the Department of Transportation (department).

During the design phase of the project, the department's design engineer supervisor, Tim Fields, approved the construction of a five foot retaining wall without a fence running atop it. While the retaining wall was being built, it became clear that the final structure would need to be taller than five feet at its highest point due to the downward slope of a driveway situated below the wall. Alterations to the retaining wall's design were implemented through a "change order process" that provided notice to the department of the modifications. The modified construction plan called for the building of a retaining wall that would be just under six feet tall at its highest point, as well as the installation of a "Merritt Parkway" style guardrail at the end of the parking lot, and an area of dense landscaping between the guardrail and the top of the wall. In its final form, the retaining wall complied with the Connecticut State Building Code, which governs the construction of retaining walls within the state. On June 16, 2011, department engineers conducted a semifinal walk-through of the nearly completed project. During the walk-through, no engineers raised any concerns regarding the absence of a fence atop the retaining wall.

The plaintiff was familiar with both the pub and its adjacent parking lot. In fact, prior to moving away from the area in 2007, the plaintiff worked just down the street from the pub for seven years. In May, 2011, the plaintiff moved within a mile of the pub and began frequenting it between one and two times per week. The plaintiff testified that when he left the pub after his weekly or semiweekly visits, he typically walked through the pub's parking lot, out of the designated exit, and onto the "area of refuge," which he used to turn right onto Main Street.

On the evening of August 26, 2011, at approximately 8:30 p.m., the plaintiff went to the pub for dinner and drinks. At around 2 a.m., the plaintiff left the pub after having consumed approximately five beers. In order to reach Main Street more quickly, the plaintiff crossed the pub's parking lot, climbed over the guardrail, walked through the landscaping, and approached the retaining wall. The plaintiff testified that he was aware of the drop but was not aware of the actual distance between the wall and the ground below. As the plaintiff walked along the top of the retaining wall, he fell and injured his leg and ankle in several places.

The plaintiff subsequently brought the present action against the defendant, alleging that he was injured when he fell off of the retaining wall and that, because the retaining wall "had no protective fencing," it was "inherently dangerous and constituted an absolute nuisance." The defendant filed an answer and asserted the special defenses of assumption of the risk and recklessness. The plaintiff's public nuisance action proceeded to a jury trial on July 19, 2016. During trial, several witnesses

offered testimony relevant to both liability and damages. The plaintiff testified about the night in question and the injuries he sustained from his fall. The jury also heard testimony from James Fielding, the project manager who oversaw the construction of the retaining wall, as well as Richard Ziegler, a forensic engineer and the plaintiff's expert witness. Various exhibits were also introduced, including photographs of the retaining wall, the surrounding area, the Merritt Parkway style guardrail, and the landscaping between the guardrail and the retaining wall.

Before the jury began its deliberations, the trial court charged the jury in relevant part: "First, the plaintiff must prove that the retaining wall was inherently dangerous . . . that it had a natural tendency to create danger and to inflict injury upon person or property. It is the condition itself which must have a natural tendency to create danger and inflict injury. You, as the trier of fact, must consider all of the circumstances involved in determining whether . . . the condition in that particular location had a natural tendency to create danger and inflict injury. Second, the plaintiff must prove that the danger was a continuing one. . . . Third, the plaintiff must prove that the use of the land, in this case the retaining wall, was unreasonable or unlawful. In making a determination concerning the reasonableness of the use of the land, all the surrounding factors must be considered. Fourth, the plaintiff must prove that the condition interferes with a right common to the general public. . . . If you find that the plaintiff has proven the above elements of a public nuisance, next the plaintiff must prove that the nuisance was a proximate cause of the injuries suffered by [the plaintiff]. . . . If the plaintiff fails to prove any one element, then a public nuisance has not been established, and you should return a verdict for the defendant."[3]

The trial court, in explaining the verdict forms and the special interrogatories, also instructed the jury: "[F]or example, you respond to question one. If you answer no, as the instructions indicate, you must return a verdict for the defendant, and you would fill out the defendant's verdict form and that would end your deliberations. If you answer number one yes, as the instructions indicate, then you go on to question two, and you answer that question. After question two, if you were to answer that question no, then you would return a verdict for the defendant using the defendant's verdict form. If you answer yes, you continue to number three. And you continue through the process until you've reached your verdict either using one or the other of the verdict forms. You necessarily also have to complete the jury interrogatories at least completely or to where you stop if you answer a question no."

The trial court then submitted seven special interrogatories to the jury. The special interrogatories relevant

to this appeal, special interrogatories one and three, provided: (1) "Has [the] plaintiff proven to you, by a preponderance of the evidence, that the condition complained of, the subject retaining wall was inherently dangerous in that it had a natural tendency to inflict injury on person or property?" And (3) "Has [the] plaintiff proven to you, by a preponderance of the evidence, that the defendant's use of the land was unreasonable or unlawful?"

During its deliberations, the jury submitted a note to the court with the following question: "If we are not all in agreement on questions [one and two] but are on question . . . three, are we able to rule in favor of the defendant?" (Emphasis omitted.) The court and the attorneys for both the plaintiff and the defendant engaged in an extensive discussion of this question outside the presence of the jury. During this discussion, the plaintiff's counsel stated: "[I]f some of them are saying that the wall was . . . inherently dangerous and the danger was continuing, then that means that it has to be unreasonable." The court disagreed, responding that the "law requires that you, on behalf of your client, prove all four elements, and if you can't prove each element, then there's a defendant's verdict." The plaintiff's attorney responded by noting, "we don't abandon our position."

The court ultimately responded to the jury's question as follows: "Ladies and gentlemen, I instructed you on the law, and you have my charge as a court exhibit. And the plaintiff has the burden of proof, as I indicated in my charge, to prove essentially four elements of an absolute public nuisance . . . . If the jury can unanimously . . . agree that the plaintiff has not proven one of those four elements and you can agree upon that, and in this case, if it's number three and you so indicate on your jury verdict interrogatories and you check that unanimously in the negative, then you . . . can return a verdict in . . . favor of the defendant. But you must all unanimously agree that [the plaintiff] has not proven one element of the cause of action."

At the end of its deliberations, the jury returned a verdict in favor of the defendant and provided answers to three of the seven special interrogatories. The jury responded in the affirmative to special interrogatories one and two, finding that the retaining wall was inherently dangerous and that the danger was a continuing one. In response to special interrogatory three, the jury answered in the negative, indicating that the jury did not believe that the plaintiff had proven by a preponderance of the evidence that the defendant's use of the land was unreasonable.[4]

The plaintiff filed a timely motion to set aside the verdict, claiming, inter alia, that the jury's answer to the first special interrogatory, which found that the condition of an unfenced retaining wall was inherently

dangerous, was fatally inconsistent with the jury's answer to the third special interrogatory, which found that the defendant's use of the land was reasonable. The court subsequently issued a written memorandum of decision in which it denied the motion, concluding that "the jury's responses to the interrogatories were not inconsistent because there was evidence that allowed the jury to determine that, although the wall was unreasonably dangerous, it was not an unreasonable use of the land." The trial court rendered judgment for the defendant in accordance with the jury's verdict.

The plaintiff thereafter appealed from that judgment to the Appellate Court. See *Fisk* v. *Redding*, supra, 190 Conn. App. 102. In that appeal, the plaintiff argued, inter alia,[5] that the trial court had improperly denied his motion to set aside the verdict because the jury's responses to the first and third special interrogatories were fatally inconsistent and could not be harmonized. Id., 103. In a split decision, the Appellate Court agreed with the plaintiff and reversed the judgment rendered in favor of the defendant and remanded the case for a new trial. Id., 111–13.

In its decision, the Appellate Court concluded that, "as a matter of law, the jury could not have determined that the retaining wall without a fence was both inherently dangerous and not an unreasonable use of the land." Id., 111. The Appellate Court focused much of its reasoning on the third element and stated that the proper focus of the unreasonable use prong of an absolute public nuisance claim is the alleged inherently dangerous condition at issue. Id., 110–11.

In determining whether a juror could have reasonably found that the "condition at issue" did not constitute an unreasonable use of the land, the Appellate Court focused on the utility of the fenceless retaining wall. Id. Concluding that the fenceless retaining wall was both inherently dangerous and lacked any social utility, the Appellate Court stated that the retaining wall constituted an unreasonable use of the land as a matter of law. Id. The Appellate Court summarized its conclusion as follows: "[T]here is no scenario under which the jury reasonably could have determined, after concluding that the retaining wall without a fence was inherently dangerous, that the fact that the retaining wall lacked a fence served any utility to either [the town] or the community, or that a weighing of all relevant circumstances could make the use of the land for an unfenced wall that is inherently dangerous and lacks any utility, reasonable." Id., 111.

Writing separately, Judge Elgo disagreed with the majority's conclusion that the trial court had abused its discretion, explaining that, in her view, the jury's answers to the first and third interrogatories were not inconsistent and could be harmonized in accordance with this court's established public nuisance jurispru-

dence. See id., 114–15 (*Elgo, J.*, concurring and dissenting). According to Judge Elgo, the majority erred in focusing merely on "the inherent nature of the condition" itself when determining whether the defendant's use of the land was reasonable. (Emphasis omitted.) Id., 118. Judge Elgo concluded that the trial court's charge to the jury regarding the third element of an absolute public nuisance claim properly reflected this court's jurisprudence and correctly instructed the jury to "consider whether the use of the land on which the retaining wall was erected was unreasonable in light of the surrounding circumstances." Id., 115–16. According to Judge Elgo, evidence presented at trial regarding the circumstances surrounding the retaining wall provided the jury with an "adequate evidentiary basis to conclude that the defendant's use of the land did not constitute an unreasonable interference with a right common to the general public . . . ." Id., 122. This certified appeal followed.[6]

In the present appeal, the defendant argues that the Appellate Court incorrectly concluded that the trial court abused its discretion when it denied the plaintiff's motion to set aside the verdict. Specifically, the defendant argues that the Appellate Court made two errors in concluding that the interrogatories were fatally inconsistent and could not be harmonized. First, the defendant contends that the Appellate Court incorrectly focused exclusively on the absence of a fence when analyzing the reasonableness of the defendant's use of the land. Second, the defendant argues that, on the basis of the evidence presented at trial, the jury reasonably could have concluded that the retaining wall in question was inherently dangerous but did not constitute an unreasonable use of the land in light of the surrounding circumstances.

In response, the plaintiff claims that the Appellate Court correctly determined that the interrogatories in question were fatally inconsistent and that, as a result, the trial court abused its discretion by denying his motion to set aside the jury's verdict. The plaintiff argues, inter alia, that the Appellate Court correctly interpreted this court's public nuisance jurisprudence by focusing on the "condition at issue" when considering the reasonableness of the defendant's use of the land. (Emphasis omitted; internal quotation marks omitted.)

We begin by noting the standard of review and the general principles of law applicable to the defendant's claim. "The proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only

[when] an abuse of discretion is manifest or [when] injustice appears to have been done. . . . [T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror . . . but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Citation omitted; internal quotation marks omitted.) *Hall* v. *Bergman*, 296 Conn. 169, 179, 994 A.2d 666 (2010); see also *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 776, 83 A.3d 576 (2014) (noting that trial court, in ruling on motion to set aside verdict, exercises "broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb" (internal quotation marks omitted)).[7] When presented with a claim that a jury's response to a set of interrogatories is internally inconsistent, "the court has the duty to attempt to harmonize the answers" while giving the evidence "the most favorable construction in support of the verdict which is reasonable." *Norrie* v. *Heil Co.*, 203 Conn. 594, 606, 525 A.2d 1332 (1987).

This case involves a claim of absolute public nuisance. "Public nuisance law is concerned with the interference with a public right, and cases in this realm typically involve conduct that allegedly interferes with the public health and safety." *Pestey* v. *Cushman*, 259 Conn. 345, 357, 788 A.2d 496 (2002). Claims of public nuisance "fall into three general classes: (1) nuisances which result from conduct of the public authority in violation of some statutory enactment; (2) nuisances which are intentional in the sense that the [public authority] intended to bring about the [condition that] . . . constitute[s] a nuisance; and (3) nuisances which have their origin in negligence . . . ." (Internal quotation marks omitted.) *Kostyal* v. *Cass*, 163 Conn. 92, 98–99, 302 A.2d 121 (1972). A public nuisance that results from the intentional conduct of a public authority, such as in this case, is known as an absolute public nuisance. Id.

In order to prevail on a claim of public nuisance, a plaintiff "must prove that: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful;[8] [and] (4) the existence of the nuisance was [a] proximate cause of the [plaintiff's] injuries and damages. . . . [W]here absolute public nuisance is alleged, the plaintiff's burden includes two other elements of proof: (1) that the condition or conduct complained of interfered with a right common to the general public . . . and (2) that the alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance." (Citations omitted; footnote added; internal quotation marks omitted.) *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn.

177, 183, 527 A.2d 688 (1987). Whether a plaintiff is able to prove these elements is "a question of fact which is ordinarily determined by the trier of fact." (Internal quotation marks omitted.) *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 221 Conn. 194, 197, 602 A.2d 1011 (1992).

For the past eighty years, this court has held that "[w]hether . . . a particular condition upon property constitutes a [public] nuisance does not depend merely upon the inherent nature of the condition . . . ." *Balaas* v. *Hartford*, 126 Conn. 510, 514, 12 A.2d 765 (1940). Proving by a preponderance of the evidence that the condition complained of has a natural tendency to create danger and inflict injury is not enough. See *Beckwith* v. *Stratford*, 129 Conn. 506, 508, 29 A.2d 775 (1942). Instead, the third element of a public nuisance claim requires a showing that the defendant's *use of the land* was also unreasonable or unlawful. *Pestey* v. *Cushman*, supra, 259 Conn. 355–56 (identifying four distinct elements of nuisance claim as product of this court's "public nuisance cases"); see also *Beckwith* v. *Stratford*, supra, 508 ("[t]o constitute a nuisance in the use of land, it must appear not only that a certain condition by its very nature is likely to cause injury but also that the use is unreasonable or unlawful").

According to this court's public nuisance jurisprudence, the reasonableness of the defendant's use of the land is determined through a "weighing process, involving a comparative evaluation of [the] conflicting interests" involved. (Internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 456, 736 A.2d 811 (1999). When weighing the interests at issue, the fact finder is required to take into account "all relevant facts" pertinent to the defendant's use of the land, "such as its location, its adaptation to the beneficial operation of the property, the right of members of the public to go upon the land adjacent to it, and the use to which they would naturally put that land." (Internal quotation marks omitted.) *Kostyal* v. *Cass*, supra, 163 Conn. 99, quoting *Balaas* v. *Hartford*, supra, 126 Conn. 514. The "multiplicity of factors" relevant to evaluating the reasonableness of the defendant's use of the land also includes "both the general activity [on the land] and what is done about its consequences."[9] (Internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 457–59.

In the present case, we conclude that the trial court did not abuse its discretion when it denied the plaintiff's motion to set aside the verdict because the jury's answers to the first and third interrogatories, finding that the retaining wall was inherently dangerous but not an unreasonable use of the land, can be harmonized in light of our established public nuisance jurisprudence. In reaching the opposite conclusion, the Appel-

late Court incorrectly focused its analysis under the third element of a public nuisance claim solely on the "nature of the condition" itself, in this case, the narrow concept of a retaining wall without a fence. See *Fisk* v. *Redding*, supra, 190 Conn. App. 118. Analyzing the reasonableness of the fenceless retaining wall in isolation, the Appellate Court ignored the multiplicity of factors that the jury could have taken into account in its determination that the defendant's use of the land, when considered in context, was not unreasonable.

The Appellate Court erred by focusing its inquiry under the third element exclusively on "[t]he condition at issue . . . not the wall itself or [the project], but the wall without a fence atop it."[10] Id., 111. According to the Appellate Court, the jury was required to consider "not . . . whether the wall itself had some use to hold back the earth, but whether there was any useful public purpose to erecting the wall without a fence atop it . . . ." Id., 110–11. Concentrating exclusively on the retaining wall's lack of a fence, the Appellate Court concluded that the fenceless nature of the wall served no "utility to either the defendant or the community" and, therefore, that "a weighing of all relevant circumstances" could not make the use of the land reasonable as a matter of law.[11] Id., 111.

The Appellate Court's treatment of the "condition at issue" as the primary focus of the unreasonable use element of a public nuisance claim is not supported by this court's precedent. Our prior case law demonstrates that the unreasonable use inquiry in the public nuisance context is not assessed by reference solely to the alleged defect or deficiency in the condition at issue. In *Balaas* v. *Hartford*, supra, 126 Conn. 511–12, 514, when determining whether the trial court correctly concluded that a ledge with a fifteen foot drop, located in Goodwin Park in Hartford, did not constitute a public nuisance, this court focused not on the ledge itself, but on how the land surrounding the ledge was generally used and on the absence of evidence that others had used it in a manner similar to the plaintiff. When reviewing a trial court's determination that a public dump amounted to an absolute public nuisance, this court, in *Marchitto* v. *West Haven*, 150 Conn. 432, 436–38, 190 A.2d 597 (1963), looked beyond the condition of the dump itself and considered the surrounding circumstances, including the nature and use of the land around the dump and the absence of security measures designed to prevent the public from improperly accessing the dump. In order to determine whether the complained of nuisance in *Laspino* v. *New Haven*, 135 Conn. 603, 604–605, 609, 67 A.2d 557 (1949), a waterway in a partially developed park, made the defendant's use of the land unreasonable, we focused on the reasonableness of the defendant's overall plan to "[develop and open the] land as a public park," not on the condition of the waterway itself.

The proper inquiry according to our precedent is not whether the inherently dangerous condition alone is reasonable, but whether the defendant's use of the land constitutes a reasonable "use of the property in the particular locality under the circumstances of the case." (Internal quotation marks omitted.) *Nicholson* v. *Connecticut Half-Way House, Inc.*, 153 Conn. 507, 510, 218 A.2d 383 (1966). When considering the reasonableness of the defendant's use of the land, the condition at issue cannot be viewed in isolation but, instead, must be viewed in the context of the surrounding circumstances. See *Pestey* v. *Cushman*, supra, 259 Conn. 352–53 ("[u]nreasonableness cannot be determined in the abstract, but, rather, must be judged under the circumstances of the particular case"); see also *Beckwith* v. *Stratford*, supra, 129 Conn. 508 (noting that "the same conditions may constitute a nuisance in one locality or under certain circumstances, and not in another locality or under other circumstances").

When determining if the defendant's use of the land is reasonable in light of the surrounding circumstances, the fact finder is allowed to consider *all* of the factors surrounding the use in question. See *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 457 (noting that, under third element, jury "must consider the location of the condition and any other circumstances . . . which indicate whether the defendants [were] making a reasonable use of the property" (emphasis omitted; internal quotation marks omitted)). As we have previously noted, the factors that this court has looked to when determining the reasonableness of the use of land in the public nuisance context include the "location, its adaptation to the beneficial operation of the property, the right of members of the public to go upon the land adjacent to it . . . the use to which they naturally put that land"; (internal quotation marks omitted) *Kostyal* v. *Cass*, supra, 163 Conn. 99, quoting *Balaas* v. *Hartford*, supra, 126 Conn. 514; and both "the general activity [on the land] and what is done about its consequences." (Internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 459. In considering these factors, this court has looked to the location of the condition itself; see *Kostyal* v. *Cass*, supra, 99; the absence of evidence that persons other than the plaintiff had been injured by the condition; see *Balaas* v. *Hartford*, supra, 514; and the defendant's failure to adopt reasonable safety measures that could have mitigated the danger posed by the condition. See *Marchitto* v. *West Haven*, supra, 150 Conn. 436–37.

In this case, the trial court's following instruction to the jury correctly reflected the focus of the inquiry, as dictated by our prior precedent: "In making a determination concerning the reasonableness of the use of the land, *all the surrounding factors* must be considered."

(Emphasis added.) Judge Elgo aptly summarized the inquiry put to the jury under the third interrogatory: "Unlike the first interrogatory, which required the jury to determine whether the retaining wall itself was inherently dangerous, the inquiry under the third interrogatory required the jury to consider whether the use of the land on which the retaining wall was erected was unreasonable in light of the surrounding circumstances." (Emphasis omitted.) *Fisk* v. *Redding*, supra, 190 Conn. App. 116 (*Elgo, J.*, concurring in part and dissenting in part). When conducting this inquiry, "the jury was not confined to a review of the retaining wall in isolation. Rather, the jury was required to 'take into account a multiplicity' of surrounding factors . . . including 'both the general activity [on the land] and what is done about its consequences.' " (Citation omitted.) Id., 118.

During the trial, the jury received considerable evidence of the various circumstances surrounding the retaining wall. As Judge Elgo noted, the jury "was presented with an abundance of documentary and testimonial evidence, including several photographs of the land in question, indicating that both a guardrail barrier and a dense landscaping buffer separated the retaining wall from the adjacent parking lot, from which it is undisputed that the plaintiff entered the land. . . . Fielding, who served as the project manager and oversaw construction of the retaining wall, testified at trial that installing a fence on the retaining wall 'was never discussed' because the defendant 'had the guardrail in place serving to protect vehicles and pedestrians.' Beyond that, the plaintiff's own expert witness, forensic engineer . . . Ziegler, conceded at trial that the guardrail barrier was an effective means of keeping people out of the area between the retaining wall and the parking lot." (Citation omitted.) Id., 118–19. The jury was also presented with no evidence that any individual, including the plaintiff himself, had previously walked over the guardrail barrier, navigated through the dense landscaping, and fallen off the wall. See id., 120 and n.7. In terms of the overall utility of the retaining wall, the jury was presented with "evidence of the necessity and, hence, utility, of the retaining wall, as it was constructed to replace an existing retaining wall and meant to preserve the public's right to traverse Main Street below, particularly pedestrians, bicyclists, and joggers." Id., 118.

Reviewing the totality of the evidence presented at trial, the jury in the present case could have reasonably concluded that the defendant's use of the land was reasonable in light of the benefits of the retaining wall, the steps that the defendant took to mitigate the danger posed by the retaining wall, such as the placement of the guardrail and dense vegetation between the parking lot and the retaining wall, and the absence of any evidence that other individuals had fallen off of the

retaining wall prior to the defendant's accident. Id., 119–20 (*Elgo, J.*, concurring in part and dissenting in part). By framing the third element as an inquiry "not [into] whether the wall itself had some use to hold back the earth, but whether there was any useful public purpose to erecting the wall without a fence atop it," the Appellate Court incorrectly restricted the focus of the inquiry and, as a result, failed to consider the various factors that could support the jury's conclusion that, despite the inherent dangerousness of the retaining wall, the defendant's use of the land was reasonable in light of the surrounding circumstances. Id., 110–11.

Viewing the evidence presented in this case in accordance with our established nuisance jurisprudence and in a light most favorable to upholding the jury's verdict; see, e.g., *Hall* v. *Bergman*, supra, 296 Conn. 179; it is clear that the jury reasonably could have concluded that, although the retaining wall was inherently dangerous, the defendant's use of the land was reasonable in light of the surrounding circumstances. Because the jury's answers to the first and third special interrogatories are not inconsistent, the trial court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to render judgment affirming the judgment of the trial court.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** November 9, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We note that the plaintiff also named BL Companies, Inc., and M. Rondano, Inc., as defendants in the present action. The defendant BL Companies, Inc., was awarded summary judgment by the trial court, a decision that was subsequently upheld by the Appellate Court. See *Fisk* v. *Redding*, 164 Conn. App. 647, 649, 138 A.3d 410 (2016). Following the Appellate Court's decision in that appeal, the plaintiff voluntarily withdrew his claims against M. Rondano, Inc. In the interest of simplicity, we refer to the town of Redding as the defendant throughout this opinion.

[2] This retaining wall was built in order to replace a timber retaining wall that had previously existed in the same location.

[3] Although the trial court correctly instructed the jury on the elements of a public nuisance claim, we note that greater specificity regarding the unreasonableness inquiry may be beneficial to jurors who are tasked with navigating this complex area of tort law. To illuminate the contours of this inquiry, trial courts may consider providing jurors with examples of the factors that this court has identified as relevant to determinations of unreasonableness in the nuisance context. See *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 459, 736 A.2d 811 (1999) ("[t]he conduct for which the utility is being weighed includes both the general activity and what is done about its consequences" (internal quotation marks omitted)); *Kostyal* v. *Cass*, 163 Conn. 92, 99, 302 A.2d 121 (1972) ("[w]hether . . . the particular condition of which the plaintiffs complain constituted a nuisance does not depend merely upon the inherent nature of the condition, but involves also a consideration of all relevant facts, such as its location, its adaptation to the beneficial operation of the property, the right of members of the public to go upon the land adjacent to it, and the use to which they would naturally put that land" (internal quotation marks omitted)); see also footnote 9 of this opinion.

We also note that the plaintiff did not substantively challenge either the

trial court's charge to the jury relating to the third element or the wording of the interrogatories. The plaintiff's sole exception to the proposed charge related to the first element and concerned the trial court's decision not to include the modifier "without a fence" after the words "retaining wall" under the first element. We note here, however, that, because the retaining wall lacked a fence at the time of the defendant's fall, the absence of the fence was necessarily considered by the jury when it concluded that the retaining wall, at the time of the defendant's injury, was inherently dangerous. The absence of the plaintiff's requested modifier had no impact on the jury's deliberations under the first element.

[4] The jury left special interrogatories four, five, six, and seven unanswered.

[5] The plaintiff also appealed the trial court's exclusion of evidence of remedial measures taken by the defendant following his injury. *Fisk* v. *Redding*, supra, 190 Conn. App. 101. This issue is not presented to us on appeal.

[6] This court granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court correctly determine that the jury's verdict should be set aside because the jury's response to the first special interrogatory, that the condition of an unfenced retaining wall was inherently dangerous, was fatally inconsistent with its response to the third special interrogatory, that the defendant's use of the land nevertheless was not unreasonable?" *Fisk* v. *Redding*, 332 Conn. 911, 209 A.3d 645 (2019).

[7] We note that this court will review a trial court's ruling on a motion to set aside a verdict under a plenary standard of review when the claim turns on a question of law. See, e.g., *Snell* v. *Norwalk Yellow Cab, Inc.*, 332 Conn. 720, 763, 212 A.3d 646 (2019). The parties agree that an abuse of discretion standard applies to the present appeal.

[8] The parties do not dispute that this court's established public nuisance jurisprudence requires the fact finder, under the third element of the cause of action, to focus on the reasonableness of the defendant's use of the land. We recognize that, in the private nuisance context, this court has changed the focus of the third element to examine the reasonableness of the defendant's alleged interference with the plaintiff's use and enjoyment of the plaintiff's property. See *Pestey* v. *Cushman*, supra, 259 Conn. 360–61. The Restatement (Second) of Torts embraces a similar approach in its treatment of public nuisance claims. See 4 Restatement (Second), Torts § 821B (1), p. 87 (1979) ("[a] public nuisance is an unreasonable interference with a right common to the general public"). Because the claim before us turns on whether the jury's responses to the first and third special interrogatories can be harmonized under our existing case law, we need not address the distinction between the Restatement (Second) of Torts and the unreasonableness inquiry dictated by our public nuisance jurisprudence.

[9] The Restatement (Second) of Torts provides that the reasonableness of an intentional invasion of a public right is determined by weighing the gravity of the interference with the utility of the defendant's conduct. See 4 Restatement (Second), Torts § 826, p. 119 (1979) ("[a]n intentional invasion of another's interest in the use and enjoyment of land is unreasonable if . . . the gravity of the harm outweighs the utility of the actor's conduct"); see also id., comment (a), pp. 119–20. We have not previously adopted the weighing analysis articulated in §§ 826 through 831 of the Restatement (Second) of Torts in the context of claims of public nuisance. We note, however, that the inquiry dictated by our public nuisance jurisprudence necessarily requires the fact finder to engage in a similar comparative analysis of the benefits and harms posed by the defendant's use of the land. See, e.g., *Balaas* v. *Hartford*, supra, 126 Conn. 514; see also *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 457; *Maykut* v. *Plasko*, 170 Conn. 310, 314, 365 A.2d 1114 (1976); *O'Neill* v. *Carolina Freight Carriers Corp.*, 156 Conn. 613, 617–18, 244 A.2d 372 (1968); *Nair* v. *Thaw*, 156 Conn. 445, 452, 242 A.2d 757 (1968).

[10] In his brief, the plaintiff commits the same error as the Appellate Court and suggests that the proper focus of the unreasonable use inquiry is the "dangerous condition," in this case, the "retaining wall *without a fence.*" (Emphasis in original.)

[11] If an isolated analysis of the inherently dangerous condition could support a finding that the defendant's use of the land was unreasonable and that the complained of condition constituted a public nuisance as a matter of law, the third element of a public nuisance claim would be rendered superfluous. Such an interpretation of the elements of a public nuisance cause of action is inconsistent with our prior case law and the long estab-

lished principle that the first and third elements of a public nuisance cause of action are distinct. See *Beckwith* v. *Stratford*, supra, 129 Conn. 508 ("[t]o constitute a nuisance in the use of land, it must appear not only that a certain condition by its very nature is likely to cause injury but also that the use is unreasonable or unlawful").

––––––––––––––––––––––––––